MILDRED H. REID, APPELLEE, v. BANKERS LIFE COMPANY OF DES MOINES, IOWA, A CORPORATION, APPELLANT.

28 N. W. 2d 542

Filed July 3, 1947.    No. 32240.

*Jack, Vette & Elliott,* for appellant.

*Hubka & Hubka,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

This action was instituted by the beneficiary to recover double indemnity under the provisions of a life insurance policy. The defense in substance was that the policy was not in force and effect at the time of death of the insured by reason of failure to pay the last current premium due and payable as provided therein. Plaintiff was awarded a verdict and judgment. Defendant's motion for new trial was overruled, and it appealed to this court. Substantially, insofar as important here, defendant's assignments of error were that the verdict and judgment were contrary to law and not sustained by the evidence. We sustain those assignments.

The insured, born October 9, 1925, was the son of plaintiff and James G. Reid. Concededly, on April 8, 1943, the son's age changed for life insurance purposes. In other words, until that date he could be insured at a lower premium rate, applicable to age 17, but thereafter a higher premium rate, applicable to age 18 was required. On April 7 defendant's agent talked with the son at the home of a neighbor about insurance, and obtained the date of his birth.

Thereafter, on April 15, 1943, the agent called at the farm home of insured, where he lived with his parents. The agent discussed with insured and his father and mother the advisability of obtaining an insurance policy upon the life of the son. Premium rates were discussed. At that time they furnished the agent the information re-

quired and requested as the basis for obtaining such a policy. In their presence, the agent filled out an application for a policy in the amount of $1,000, with double indemnity for accidental death, and endowment at age 60. The application recited that insured was "Age 17 Nearest birthday" and provided for payment of a semi-annual premium of $11.68, concededly applicable to that age.

The application also contained the following provision: "(2) the Company shall incur no liability unless and until, during the lifetime and continued insurability of the proposed insured, a policy issued hereon is manually delivered to the applicant and the entire first premium is paid, *in which event such policy shall be deemed effective as of the date of issue shown on page one thereof*, * * *." (Italics ours) It also stated: "I have given * * * Note due 6/15/43 for $11.68 to cover first premium above specified on the Policy hereby applied for." It also stated: "27. If, in the opinion of the Company, a medical examination by a duly appointed medical examiner is necessary as further evidence of insurability, do you agree to take such examination? Yes."

The father read the application, which admittedly, together with the policy later issued, delivered, and accepted, constituted the entire contract. Thereafter, father and son both signed the application and executed the promissory note above referred to. The following statement appeared in the note: "This note is given in connection with my application for a policy of life insurance issued by the Bankers Life Company, applied for by me on or about the 15th day of Apl. 1943. If such policy is issued, then in the event of my death before the payment of this note, any part thereof unpaid with interest thereon shall be deducted by the said Company from any settlement under the policy and be paid to the payee herein."

On May 24, 1943, the insured took a physical examination required by defendant, and on June 1 the agent in-

formed insured that the policy had been issued. On June 17 the agent called at the home and in the presence of the father and mother delivered the policy to insured, at which time he signed and delivered the following receipt: "Received of BANKERS LIFE COMPANY, of Des Moines, Iowa, my Policy No. B 1329688 which is accepted. (Sign here) Harold Wayne Reid." At the same time the father paid in full the promissory note theretofore given, which was returned to him. Thereafter, the father paid the second semiannual premium on November 6, 1943, a few days prior to expiration of the grace date after October 8, as provided in the policy.

No other premiums were ever paid thereafter, although an attempt was made by the father to do so after the insured's death. Without doubt numerous appropriate premium notices were sent to insured by defendant prior to their due date. Also, defendant sent timely warning notices prior to expiration of the policy grace periods and thereafter sent lapsed letters of direction with forms for reinstatement. In evidence adduced for plaintiff, any knowledge thereof was denied; however, it was admitted that they could have been sent and received, but that if they were, nothing was done about it.

The policy was admittedly delivered in a manila envelope, upon the outside of which appeared, in typed capital letters, the following:

"            HAROLD WAYNE REID
BANKERS LIFE COMPANY OF DES MOINES IOWA
  #B-1329688      $1000      ENDOWMENT AT AGE 60
                 (PARTICIPATING)   (red type)
      ISSUED APRIL 8TH 1943         AGE 17
DOUBLE INDEMNITY FOR ACCIDENTAL DEATH
                              (red type)

            PREMIUM DEPOSITS
      ANNUAL                $22.89
      SEMI-ANNUAL            11.68  (red type)
      QUARTERLY              5.96          "

The insuring clause of the policy, appearing on the first page thereof, provided in unmistakably bold type:

"Policy No. B 1329688 Amount of Insurance $1,000 Age 17

### BANKERS LIFE COMPANY
### DES MOINES, IOWA

Agrees to pay

_____ ONE THOUSAND _____ Dollars to the Insured _____ HAROLD W. REID _____, on the 8TH day of APRIL, 1986, upon surrender of this Policy, while in full force, at the Home Office of the Company, if the Insured be then living; or upon receipt by the Company at its Home Office of due proof of the death of the Insured before such date while this Policy is in full force, AGREES TO PAY said amount of insurance to the Beneficiary, MILDRED H. REID, MOTHER, IF LIVING, OTHERWISE TO MARILYN L. REID, SISTER of the Insured, if living; otherwise as hereinafter designated with the power to change Beneficiary being reserved to the Insured.

A MONTHLY INCOME FOR THE INSURED MAY BE PROVIDED UNDER THIS POLICY upon its surrender prior to the Insured's death. (See page 3 hereof.)

Other 'Special Settlement Options' for the Beneficiary and for the Insured are provided on page 3 hereof.

This Policy will participate in the divisible surplus of the Company. (See page 3 for full details.)

This Policy is issued in consideration of the application, a copy of which is attached hereto, and of the payment in advance of $11.68 (which shall maintain the Policy in force from the date of issue set out below to the 8TH day of OCTOBER, 1943), and of the further payment in advance of $11.68, on or before the 8TH day of each OCTOBER AND APRIL hereafter until 43 full years' premiums shall have been paid, except that this Policy may become paid-up at an earlier date by dividends as hereinafter provided, and except as modified

in the agreements, if any, for disability or double indemnity benefits attached hereto, and except that no premium shall be payable for any policy year after that in which death of the Insured occurs.

The provisions set forth by the Company on the following pages are a part of this Contract as fully as if recited over the signatures hereto affixed.

CERTAIN WAR AND AERONAUTIC RISKS ARE NOT ASSUMED UNDER THIS POLICY   (red type)

In Witness Whereof, the BANKERS LIFE COMPANY has by its President and Secretary signed, and by its Registrar countersigned, this Policy at its Home Office in the City of Des Moines, Iowa, *this 8TH day of APRIL, 1943, which is the date of issue of this Policy."*   (Italics ours)

Under GENERAL PROVISIONS on page 2, in a paragraph dealing with "Premium Payments" the policy provided:   "No payment shall continue the Policy in force beyond the date when the next payment is due, except as herein provided."

On the same page, in a paragraph entitled "Grace" it provided:   "Thirty-one days of grace without interest will be allowed in payment of any premium or installment thereof after the first; this Policy to remain in full force during such period."

Also on the same page in a paragraph entitled "Anniversary Date and Policy Year" it provided:   "Unless changed by indorsement, anniversary dates and policy years referred to herein shall be computed from the date of issue set forth on page one hereof."

It will be noted that the contract provided not only for payment upon death of the insured but also for endowment at age 60, monthly income, cash values, paid-up cash surrender values, paid-up participating life policy benefits, extended insurance, loans, and dividends, as well as other features, all based upon the number of effective policy years, to be computed from

date of issue thereof, April 8, 1943, as clearly shown in the policy.

While the application provided that defendant should incur no liability unless and until, during the lifetime and continued insurability of the proposed insured, the policy should be manually delivered to the applicant and the entire first premium paid, it also provided that in that event, which happened without dispute, the policy should be effective for all purposes as of the date of issue shown on page 1 thereof, and it must be remembered that in order to have the benefit of "Age 17 Nearest birthday" as recited in the application, thereby giving the insured a lower rate as well as the added contractual benefits heretofore recited, the policy had to be issued as of April 8, 1943.

Plaintiff in the case at bar did not rely upon fraud or mistake. She attached a copy of the contract to her petition and sought recovery thereon as written, simply upon the theory that she had no knowledge that it was issued as of April 8, 1943 or that it provided for payment of premiums on October 8 and April 8 semiannually thereafter. Her theory was that since the policy was not delivered until June 17, 1943, on which date the premium note theretofore given was paid in cash, the policy became effective on that date only, regardless of other provisions in the application and policy. Plaintiff took the position that thereafter the semiannual premium dates were the 17th day of December and the 17th day of June respectively, rather than the 8th day of October and the 8th day of April, as specifically provided in the contract. A fortiori, it was argued that the premium paid November 6, 1943, paid the insurance premiums in full, keeping the contract in full force and effect until June 17, 1944 and 31 days of grace thereafter, permitting recovery thereon for death of insured, which admittedly occurred June 23, 1944, as the result of an accident under circumstances within the double indemnity provisions of the contract if it

were then in force and effect.

On the other hand, defendant argued that the provisions of the application and policy which formed the entire contract were plain, consistent, unambiguous, and binding upon the parties; therefore the semiannual premium dates of 8th day of October and April respectively, as specifically provided in the contract, were controlling, and that failure to pay the premium due and payable on the 8th day of April, 1944, or within 31 days thereafter, lapsed the policy, avoiding any liability thereon.  We agree with defendant's contentions.

In Weidenaar v. New York Life Ins. Co., 36 Mont. 592, 94 P. 1, a case of different character but involving an insurance contract, the court said:  "In the consideration of this case, many adjudications of the courts, in cases where life insurance companies were parties, have been examined, including all cases cited by the respondent. It seems to me that some courts, of the very highest respectability and learning, have taken judicial notice of matters which they were not by law authorized to judicially know, and have gone so far in holding insurance companies liable as to result in the application of different rules of contract law to them than would have been applied to individuals under the same circumstances.  I cannot agree that this may rightfully be done."

In Gillan v. Equitable Life Assurance Society, 143 Neb. 647, 10 N. W. 2d 693, 148 A. L. R. 496, this court said:  "The supreme court of the United States in Northern Assurance Co. v. Grand View Bldg. Ass'n, 183 U. S. 308, 22 S. Ct. 133, a case originating in Nebraska, declared that the rule with regard to impeachment of the contents of ordinary contracts was equally applicable to insurance contracts.  In relation to this subject in its application to ordinary as well as insurance contracts the court in the opinion quoted with approval from Starkie (9th Am. ed.) 587:  'It is likewise a general and most inflexible rule, that wherever written instruments are appointed, either by the requirement of

law, or by the compact of the parties, to be the repositories and memorials of truth, any other evidence is excluded from being used, either as a substitute for such instruments or to contradict or alter them. This is a matter both of principle and policy; of principle, because such instruments are in their nature and origin entitled to a much higher degree of credit than parol evidence; of policy, because it would be attended with great mischief if those instruments upon which men's rights depended were liable to be impeached by loose collateral evidence.' "

In the same opinion we quoted with approval from Sun Fire Office v. Wich, 6 Colo. App. 103, 39 P. 587 as follows: "There is no reason, in contracts of insurance, that a party should be, by law, relieved from the duty of exercising the same ordinary care and prudence that is required in every other business transaction. It is the duty of every man to read what he signs. His failure to do so will or should not relieve him, or allow him to avoid the contract."

Likewise therein we quoted with approval from Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, as follows: "Of course if the insured can prove that he made a different contract from that expressed in the writing he may have it reformed in equity. What he cannot do is to take a policy without reading it and then when he comes to sue at law upon the instrument ask to have it enforced otherwise than according to its terms. The court is not at liberty to introduce a short cut to reformation by letting a jury strike out a clause."

The above statements have application to the case at bar. In other words, plaintiff in an action at law sought recovery on the contract of insurance precisely as applied for and accepted, by having it enforced in a manner otherwise than according to its plain terms, which the law will not permit.

On the other hand, the great majority of courts now hold in effect that even though an application may state

that the policy shall not take effect until the application is approved by the insurer, or until the first premium is paid, or until the policy is issued or delivered to the insured, that the effective date of the policy and the premium payment dates as shown and set out in the policy control, in the absence of inconsistency, ambiguity, mistake, fraud, or statutory prohibition, none of which were involved herein, regardless of the date on which such dependent event occurred. Without doubt, such agreements are ordinarily valid and enforceable only as written. The cases so holding are far too numerous to cite or discuss at length herein, but they will be found in the annotations to 6 A. L. R. 774, 32 A. L. R. 1253, 80 A. L. R. 957, and 111 A. L. R. 1420.

Concededly, a few states have adopted a minority rule, holding otherwise under varying conditions and application or policy provisions, which we need not here discuss. However, it will be observed that most of such cases are of ancient origin and the conclusions therein were generally based on contracts of different quality or character, which did not provide the many specific benefits, the values of which were dependent upon policy years commencing at definite times, which modern insurance policies, including the one at bar, now contain. Such provisions now form a large part of the policy values received by the insured as consideration for payment of the premiums as provided in the contract. It will be noted also that in some cases courts formerly adopting the minority rule have abandoned it by reversing and overruling their former decisions, thereby joining the majority.

Varying reasons are given by courts adopting the majority rule, chief of which is that effective dates of policies and premium due dates should be definitely fixed by binding written contracts rather than determinable after loss at the caprice of parol testimony of doubtful veracity, thereby permitting the avoidance or destruction of plain contractual provisions and undermin-

ing their actuarial foundations, the fundamental basis of all insurance. When so fixed in writing the result is a definite contract, easily understood and entirely just to the parties. It seems almost trite to say that a contract for insurance, antedated by agreement of the parties, as shown by the application and policy in the case at bar, is binding upon them and the premium payment dates should be those inserted in the contract. Who can truthfully say that injustice could result from the construction of such a valid written contract in accordance with its terms?

Among other authorities, plaintiff relied upon Cilek v. New York Life Ins. Co., 97 Neb. 56, 149 N. W. 49, decided in 1914. While that case did not pass upon the precise question involved in the case at bar, it appears to have followed the minority rule. In that case, the application was signed on June 13, 1899. It provided in substance that the company would incur no liability under the application until it had been received and approved by the company at the home office and the premium had actually been paid to and accepted by the company or its authorized agent, during the lifetime and good health of the applicant. It was received and approved by the company on June 23 and delivered June 26.

The opinion does not disclose whether or not a specific date for payment of recurring premiums other than the first was provided for in the policy. Apparently for that reason the case is summarized in 6 A. L. R. 780 as one where: "No date was specified for the payment of the premiums." However, a reading of the record therein discloses that the contract was a 20-year endowment policy with participation in profits at expiration of that period. It contained extended insurance and cash loan provisions, all dependent on policy years beginning June 13, 1899, the date of the policy. The policy provided: "THIS AGREEMENT is made in consideration of the sum of Two hundred and ninety Dollars and seventy Cents, the receipt of which is hereby acknowledged, and

of the payment of a like sum on the thirteenth day of June in every year thereafter during the continuance of this Policy until Twenty full years' premiums shall have been paid."

It will be noted in that case the insured paid premiums as provided therein up to and including June 1905. He died July 23, 1906, without paying the premium due in June 1906. Nevertheless, this court paid no heed to the plain provisions of the contract and the fact that the policy had been in full force and effect as written for a period of more than seven years, thereby accumulating cash and loan values as and from June 13, 1899, which insured himself had already exhausted, but followed the minority rule and held that the premium date was June 23, the date of approval of the application, and permitted a recovery upon that premise. Of course, the case is distinguishable from the one at bar in view of the difference between the provisions in the application and policy, but in any event we have been unable to find any precedent logically supporting the conclusions reached therein.

In that opinion the court relied chiefly upon Stramback v. Fidelity Mut. Life Ins. Co.; 94 Minn. 281, 102 N. W. 731, decided in 1905, wherein the application was made August 25, 1902, but the policy was issued September 8 and delivered September 24. The application was similar to that in the Cilek case. However, the policy provided for the payment of subsequent premiums semi-annually on the 8th day of September and March each year, the policy to remain in force only for the period actually paid. As stated in the opinion: "It is a curious fact that the application and the policy are silent as to the date from which the policy shall commence to run." It differs in that respect from the case at bar. The second premium payment was made, but the one due the next September 8 was not. The insured died September 11, 1903. The trial court held that the policy forfeited on September 8, 1903, for failure to pay the premium when due, but the opinion, after citing and

quoting from McMaster v. New York Life Ins. Co., 183 U. S. 25, 46 L. Ed. 64, 22 S. Ct. 10, also relied upon by this court in the Cilek case, reversed the case and ordered judgment for plaintiff. It appears, however, that there was a dissent primarily upon the ground that the intention of the parties as expressed by the written contract, should have prevailed.

In that connection it is interesting to note that in Juster v. John Hancock Mut. Life Ins. Co., 194 Minn. 382, 260 N. W. 493, decided in 1935 under comparable circumstances, the court approved the reasoning of the dissent in the Stramback case, and not only followed the majority rule heretofore set forth, but expressly held for naught and overruled Stramback v. Fidelity Mut. Life Ins. Co., *supra*.

McMaster v. New York Life Ins. Co., *supra*, cited and relied upon by the court in the Cilek case, was clearly distinguishable therefrom, as it is from the case at bar. A reading of the opinion will disclose that the court's conclusions therein were based primarily upon the alleged representations of defendant's agent to the insured, which were binding upon it.

We therefore conclude that the opinion in Cilek v. New York Life Ins. Co., *supra*, no longer reflects the law in this jurisdiction and insofar as it is in conflict with this opinion, it is overruled.

For the reasons heretofore stated, the verdict and judgment in the case at bar were contrary to law and not sustained by competent evidence. Therefore, defendant having appropriately moved for a directed verdict, which was overruled, the judgment should be and hereby is reversed and the cause dismissed.

REVERSED AND DISMISSED.