**Albert Daniel BURCH, Petitioner,**

v.

**COMMONWEALTH COUNTY MUTUAL INSURANCE COMPANY, Respondent.**

No. B–1560.

Supreme Court of Texas.

Feb. 11, 1970.

---

Earl B. Stober and Lee Roger Ratliff, Silsbee, for petitioner.

Orgain, Bell & Tucker, Lawrence Louis Germer and Gilbert I. Low, Beaumont, for respondent.

WALKER, Justice.

We adopt and extend to the facts of this case the general rule, thought by some to be inapplicable in Texas, that a contract of property insurance may, if the parties so intend, effectively protect against a loss occurring prior to issuance of the policy provided neither the applicant nor the insurer knew of the loss when the contract was made.

Albert Daniel Burch, petitioner, is the assured. Commonwealth County Mutual Insurance Company, respondent, is the insurer. A family automobile policy was issued in petitioner's name by respondent's general agent, Ideal Insurance Agency, on July 19, 1967. It provided for collision coverage on a Chevrolet automobile owned by petitioner, and for a policy period of one year beginning at 12:01 a. m. on July 18, 1967. The automobile was damaged while being driven by petitioner on July 18, 1967, during the stipulated policy period but prior to issuance of the policy.

Respondent brought this suit to cancel the policy, and petitioner filed a cross-action to recover the amount of his damage, which is stipulated to be $1,900.00. Both parties filed motions for summary judgment. Respondent's motion was overruled and that of petitioner was granted by the trial court. The Court of Civil Appeals reversed and rendered judgment in favor of respondent. 440 S.W.2d 410. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

Petitioner had previously obtained through Bobby Hardin an insurance policy issued by Farmers Insurance Company on one of his automobiles. At approximately 6:00 o'clock p. m. on July 18, 1967, petitioner advised Hardin that he wanted insurance on the Chevrolet with a $50.00 or $100.00 deductible. Hardin figured the amount of the premium. Petitioner signed an application for the insurance and gave Hardin a check for the premium. Hardin told petitioner that he was covered, but there was no agreement as to the company that would issue the policy. Petitioner was under the impression that Hardin did business with a number of insurance companies and did not necessarily expect the policy to be written by Farmers Insurance Company.

The Chevrolet was in existence and had not been damaged at the time of petitioner's conversation with Hardin. Early the following morning but after the accident, Hardin took the signed application for insurance to Jack Barron, a co-owner of Ideal. Hardin stated that he did not think Farmers Insurance Company would accept the risk and requested Barron to write the

policy. Barron figured respondent's rates and wrote "Commonwealth" at the top of the application. The policy was then completed as indicated above, signed by Barron, and mailed to petitioner. Hardin delivered petitioner's check for the premium to and the same was cashed by Ideal.

Neither Hardin nor Barron knew of the loss when the policy was issued. Hardin was not authorized to act for respondent, Ideal, or any of the companies represented by the latter. Ideal had previously placed policies for Hardin, but this was always done on a case-by-case basis. Petitioner tried to reach Hardin and report the accident early on the morning of July 19, but was not able to do so until two or three days later.

The Court of Civil Appeals concluded that an insurance policy may never protect against a loss that occurred prior to making the contract. It reasoned that this is the Texas law as declared in Alliance Ins. Co. v. Continental Gin Co., Tex.Com.App., 285 S.W. 257. A similar conclusion has been reached by a number of eminent legal scholars. See H. Schumacher Oil Works, Inc. v. Hartford Fire Ins. Co., 5th Cir., 239 F.2d 836; 4 Appleman, Insurance Law and Practice § 2291. The question in *Alliance* was whether the insured might, with knowledge of a loss, ratify the unauthorized acts of an insurance agent in cancelling policies theretofore issued by one company and substituting the policies of another company. In the course of the opinion, the court stated that:

"Property in esse (with exceptions immaterial here) is the basis of a contract of or for fire insurance. A substantial element is the chance of loss. If either thing be absent (i. e. if there be no property originally or chance of loss be precluded by the certainty incident to preoccurring fire), the insurance company is in the absurd position of freely offering to pay a large and certain sum (here $10,500.00) if the insured will pay to it the comparatively insignificant amount of the premium (here, $341.20). Stated another way: In consideration of present payment by one party of the rate named, the other party agrees to pay a larger sum if, and when, a contingency happens; if the contingency does not happen, the one loses the small sum; if it does happen, the other loses the large sum (reduced by the smaller one); and it is entirely nonpermissible to assume that the parties intended to make, or did make, a contract requiring payment of the larger sum if either, or both, of them knew that the contingency, nominally in *futuro*, had already occurred. When good faith of both parties is assumed and the property does not exist, there is a mutual mistake of fact as to the very subject-matter of the agreement; if the insurer acts in good faith, but the insured knows of the previous destruction, there is present avoiding fraud. * * * The business of fire insurance has acquired quasi public aspects. Rate regulation has proceeded to the point where improper payment of losses substantially affects the well-nigh common burden. And because of these things, it is our opinion that public policy would inhibit the making or enforcement of an insurance contract in relation to imaginary property, even where both parties so intend."

Some of these statements are too broad. A person may not, with knowledge of a loss, transfer the risk from one company to another or make a contract by accepting a policy issued under such circumstances that he was under no obligation with respect thereto. See Mallard v. Hardware Indemnity Ins. Co., Tex.Civ.App., 216 S.W.2d 263 (no writ); Trinity Universal Ins. Co. v. Rogers, Tex.Civ.App., 215 S.W.2d 349 (no writ). If he applies for and obtains an antedated policy knowing that a loss has already occurred during the policy period, his failure to disclose the facts constitutes fraud that would enable the insurer to set aside the contract. See Annotation, 132 A.L.R. 1325. As suggested by the opinion in *Alliance*, moreover, it is contrary to public policy for an insurance company,

the business of which is affected with a public interest, knowingly to assume the burden of a loss that occurred prior to making the contract. This is the basis of the statements found in some opinions that an agent has no authority to issue a policy to cover a known loss. See Bankers Lloyds v. Montgomery, Tex.Com.App., 60 S.W.2d 201; United States Casualty Co. v. Rodriguez, Tex.Civ.App., 228 S.W. 487 (wr. ref.).

■ Most courts that have considered the question hold that recovery may be had on a policy antedated to include the time at which a loss occurred provided neither the applicant nor the insurer knew of the loss when the contract was made. Appleman, *supra*, § 2291; 43 Am.Jur.2d Insurance § 328; Annotation, 132 A.L.R. 1325. See also United States v. Patryas, 303 U.S. 341, 58 S.Ct. 551, 82 L.Ed. 883. We approve and adopt this as a general rule, because in our opinion it is entirely sound as applied to the facts of this case. Aside from any question of protecting insurance companies against possible fraud on the part of their customers or agents, we can think of no reason for holding that the parties may not effectively contract for the insurer to assume the risk of a loss that may or may not have occurred when the contract is made. If that is their intention, they are not mistaken in any material respect even though the insured property has, in fact, been damaged or destroyed. When neither of them knows of the loss, there is no basis for charging the insured with fraud and the company is not in the position of promising unconditionally to pay a substantial amount of money in exchange for a much smaller sum.

■ There was no contract here until respondent through its general agent, Ideal, agreed to assume the risk. Petitioner knew of the loss at that time, but Hardin did not. We hold that the general rule applies under these circumstances where the person arranging for the insurance does not know, and there was no conscious or negligent failure to advise him, of the loss. The insurer was held liable on somewhat similar facts in Canadian Indemnity Co. v. Tacke, 9th Cir., 257 F.2d 342. Although the named insured had been involved in a collision, this fact was not known to his wife, who arranged for the issuance of a predated insurance policy. It was contended that the failure to disclose the loss, known to the insured, rendered the policy void. The court concluded that the situation was controlled by the Restatement of the Law of Agency, § 256, Comment c [now Restatement, Second, Agency § 256, Comment e]:

> "A transaction is not affected by the knowledge of a principal which he cannot communicate to the agent, even though he knows that the agent is acting for him without such knowledge. It is only where the principal consciously or negligently fails to communicate with the agent that his knowledge affects the transaction. This is true whether the knowledge is acquired casually or is the result of a notification given by the other party to the transaction."

Petitioner did not know that an insurance contract for his benefit was to be made the morning of July 19th. He thought his automobile was already covered, and his failure to notify Hardin of the accident before the policy was issued cannot be regarded as either conscious or negligent. There is no contention that petitioner fraudulently failed to disclose the loss, and respondent has never claimed that the policy was antedated as the result of a mutual mistake. Its entire case is built on the proposition that an insurance company can never assume the risk of a loss that has already occurred, and this contention is unsound.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.