MOORE, Judge.
The appellant, Ray La Quay, is the named beneficiary on a life insurance policy issued by the appellee, Union Fidelity Insurance company, to his deceased spouse. La Quay appeals from a final summary judgment entered in favor of Union Fidelity-
Patricia La Quay, appellant’s deceased spouse, died on May 2, 1975, the same day on which the insurance policy was issued. Union Fidelity contends that it not liable on the policy because the policy was issued after the insured died. Thus, the sole issue on appeal is the time at which the policy became effective, as opposed to the date on which the policy became effective. We hold that the policy was effective at 12:01 A. M. on May 2, 1975 and therefore reverse.
Although the facts of this case are relatively simple, the application of what we perceive to be the correct principle of law to these facts is troublesome. Patricia La Quay applied for a term life insurance policy on April 21, 1975. The application for the policy states:
I understand that no insurance shall take effect until the policy is issued and the full first premium paid.
There is no dispute that the first full premium was paid.
The policy of insurance is an annually renewable policy which contains an expiration date of May 2, 1976. The date of issuance, as stated on the face of the policy, is May 2,1975. No specific time of day was set forth. Patricia La Quay died in the early morning hours of May 2, 1975. After Union Fidelity refused to pay the policy amount of $10,000, the appellant filed suit and both parties eventually moved for summary judgment. In support of its motion for summary judgment, Union Fidelity submitted the affidavit of one of its employees which stated that the policy of insurance was issued after 4:30 P. M. on May 2, 1975. In its final summary judgment in favor of Union Fidelity, the trial court stated:
The death of the insurance applicant, Patricia A. La Quay, occurred prior to both the acceptance and issuance of the policy of insurance so that no contract for insurance was effective under which the plaintiff may recover as a matter of law.
Appellant argues that since the policy unambiguously states that the date of issuance is May 2, 1975, and the other conditions precedent to coverage have been fulfilled, the coverage began at 12:01 A. M. on May 2nd. There are numerous cases which amply support this contention. In Mississippi Ben. Association, et al. v. Brooks, 184 Miss. 451, 185 So. 569 (1939), where the *1361 issue on appeal involved the effective date of a policy for funeral insurance, the court stated:
Under our decisions, a day begins at midnight and ends the following midnight. The policy and the application did not fix any hour within this day at which the policy would be effective, and consequently it took effect at the earliest moment of February 1st. (citations omitted).
In construing contracts it is a familiar rule to give such construction as will make the policy effective. Under the application, the Funeral Benefit Association was bound, as stated above, at the beginning of the day of February first. The fact that the policy was not actually received by [the applicant] on February first is immaterial. The policy, by its terms of the certificate, was to be effective on February first, and was actually issued and put in the mail, and under its terms became effective on February first — that is to say, at the beginning of that day, which was the hour of midnight. (emphasis added).
See also, Hodges v. Filstrup, 94 Fla. 943, 114 So. 521 (1927).
The legal significance of a specification of a particular date on a policy of insurance was considered in Lincoln Income Life Insurance Co. v. Mayberry, 341 S.W.2d 199 (Tex.Civ.App.1960), rev’d., 162 Tex. 492, 347 S.W.2d 598 (1961).[1]
It is apparent that the pleadings, evidence and insurance raise the question of which of the above is the controlling date and time. There is no question but what September 1st consists of the time between 12:01 A. M. and 12:00 midnight. The premium was paid for the entire twenty-four hours of that date.
There can be no question but that the insurance company can provide that the policy shall not be effective unless the insured is in good health at the time of its issuance, or upon its date, or at the time or date of delivery; but we believe that one of the above indicated specific times must be chosen, and that the insurance company cannot take advantage of all of them, (citation omitted). As has been stated by our courts many times, the rule is “that contracts of insurance are to be strictly construed in favor of the insured.” 341 S.W.2d at 202.
The same issue arose in the context of an interpretation of the proper date for contractual performance in Grizzly Bar, Inc. v. Hartman, 169 Colo. 178, 454 P.2d 788 (1969):
It is here observed that no hour of the day was specified in the agreement. Under such circumstances, the intention of the parties was that defendant Grizzly Bar have the full day of the 15th until midnight in which to tender performance. The law generally does not recognize fractions of a day. (citations omitted). As stated in Denver v. Pearce, supra, “. . . It is certain that the ends of justice can never require the law to depart from the ordinary rule, and recognize a fraction of a day, to defeat the manifest intention of the parties.”
In Scott v. National Travelers Life Insurance Company, 171 N.W.2d 749 (N.D.1969), the effective date for life insurance coverage was at issue. Coverage for the newly born insured was to begin after she had lived for at least 14 days. The Court held that even though the insured was not born at the exact moment past midnight of the prior day, the date of her birth would be considered to have begun at 12:01 A. M. of the day upon which she was born. In support of its construction, the Court stated:
The policy contract in question was drawn by the defendant insurance company. It could have been worded so that its meaning was clear. If it was the intention of the company to require a child to have lived 14 full days before coverage became effective under the rider, it could have so provided. Any ambiguity in the policy’s provision as to when a child was to be considered “at least 14 days old” must be construed most strongly against the party which caused the *1362 uncertainty of meaning, (citations omitted).
The foregoing authorities make it clear that it was incumbent upon Union Fidelity to specify the exact time that coverage was to begin if it intended that coverage was to begin at any time other than at the earliest moment of May 2, 1975. If the language in an insurance policy is susceptible to doubt, the language should be construed adversely to the insurer and in favor of the insured. See, Tannen v. Equitable Life Insurance Company of Washington, D.C., 303 So.2d 352 (Fla. 3rd DCA 1974).
Appellant also suggests that the affidavit of Union Fidelity’s employee should have been given limited effect. This proposition is supported by Reid v. Bankers Life Insurance Company, 148 Neb. 604, 28 N.W.2d 542 (1947):
Varying reasons are given by courts adopting the majority rule, chief of which is that effective dates of policies and premium due dates should be definitely fixed by binding written contracts rather than determinable after loss at the caprice of the parol testimony of doubtful veracity, thereby permitting the avoidance or destruction of plain contractual provisions and undermining their actuarial foundations, the fundamental basis of all insurance. When so fixed in writing, the result is a definite contract, easily understood and entirely just to the parties. It seems almost trite to say that a contract for insurance, ante-dated by agreement of the parties, as shown by the application and policy in the case at bar, is binding upon them and the premium payment dates should be those inserted in the contract. Who can truthfully say that injustice could result from the construction of such a valid written contract in accordance with its terms? 28 N.W.2d at 547.
Although Reid involved an attempt by an insurance company to negate a written, predated effective date by extrinsic parol evidence of the “true” intent of the parties, we find the Reid Court’s underlying hypothesis of fraud prevention to be a sound one.
It is abundantly clear that the term coverage on Mrs. La Quay’s life began at 12:01 A. M. on May 2, 1975. Even if we accept the appellee’s assertion that the policy was not effectively processed until 4:30 P. M. on May 2,1975, the term coverage related back to 12:01 A. M. on that date. This is so even though the insured died between 12:01 A.M. and the time that the insurance company “officially” issued the policy. There is nothing to suggest that there was any fraud, misrepresentation or concealment of material facts present in this case. At the time Union Fidelity issued its policy, it was unaware of the insured’s death, and it cannot be argued that the appellant or anyone else did anything to promote indemnity with knowledge of the insured’s death.
Union Fidelity asserts that the paramount rule of contractual interpretation is to effectuate the intent of the parties. In the present case, however, the only objective manifestation of intent is the policy itself, and that instrument clearly provides that coverage is to begin on May 2, 1975. Union Fidelity alternatively suggests that there could be no offer and acceptance inasmuch as the meeting of the minds was precluded by the death of the insured. While it is true that ordinary principles of contract law apply to the formation of insurance contracts, Rosin v. Peninsular Life Insurance Company, 116 So.2d 798 (Fla. 2nd DCA 1960), the mere death of the insured in this case did not foreclose the possibility of a meeting of the minds. The insured’s application for insurance, whether viewed as an offer made to Union Fidelity or as an acceptance of Union Fidelity’s offer to provide coverage, was a definitive act undertaken to procure a contractual benefit for the named beneficiary. There is nothing to indicate that the application was tentative or subject to modification by the insured. Union Fidelity’s issuance of the policy on May 2 can only be considered as either an acceptance made in contemplation of the insured’s prior offer, i. e. the application, or as an affirmation of Union Fidelity’s own offer to provide coverage made in contemplation of the insured’s acceptance of the *1363 original offer and Union Fidelity’s approval of the insured as an insurable person.
Although there is a paucity of case law to be applied to the facts of this case, we are persuaded by the reasoning of the Supreme Court of Texas in Burch v. Commonwealth County Mutual Insurance Company, 450 S.W.2d 838 (Tex.1970). Burch involved a factual scenario similar to that presented here. The insured experienced an automobile accident between the time when he was advised by an agent that he had coverage and the actual issuance of the insurer’s policy. Neither the agent nor the insurer was aware of the accident at the time the policy was issued. In affirming a summary judgment in favor of the insured, the Court stated:
Most courts that have considered the question hold that recovery may be had on a policy antedated to include the time at which a loss occurred provided neither the applicant nor the insurer knew of the loss when the contract was made, (citations omitted). We approve and adopt this as a general rule, because in our opinion, it is entirely sound as applied to the facts of this case. Aside from any question of protecting insurance companies against possible fraud on the part of their customers or agents, we can think of no reason for holding that the parties may not effectively contract for the insurer to assume the risk of a loss that may or may not have occurred when the contract is made. If that is their intention, they are not mistaken in any material respect even though the insured property has in fact, been damaged or destroyed. When neither of them knows of the loss, there is no basis for charging the insured with fraud and the company is not in the position of promising unconditionally to pay a substantial amount of money in exchange for a much smaller sum.
* * * * * *
Petitioner did not know that an insurance contract for his benefit was to be made the morning of July 19th. He thought his automobile was already covered and his failure to notify [the agent] of the accident before the policy was issued cannot be regarded as either conscious or negligent. There is no contention that petitioner fraudulently failed to disclose the loss, and respondent has never claimed that the policy was antedated as the result of a mutual mistake. Its entire case is built on the proposition that an insurance company can never assume the risk of a loss that has already occurred, and this contention is unsound. 450 S.W.2d at 841.
As in Burch, the beneficiary in the present case has neither acted deceitfully nor negligently in failing to report the death of his wife. Moreover, the effective date on the face of the policy was not a result of a mutual mistake of the respective parties’ intentions.
Because of the obvious ramifications, we are wary of a holding that a binding and enforceable contract did not come into existence until the exact time when it was officially approved by the insurer as a risk. For example, if we assume identical facts, except that the insured died at 3:30 P. M. on May 2, 1975, would not the insurance company be able to determine, in a self serving manner, the exact time the policy was issued and effective? On the other hand, assuming the insured died at 4:00 A. M. on May 2, 1976, would not the insurance company be able to claim that because the one year term policy went into effect on May 2, 1975, the policy terminated on the first moment of the new year, or 12:01 A. M. on May 2, 1976? In both instances, the insurance company would be free to dictate, to its own advantage and the disadvantage of the insured, a convenient term for insurance coverage. If no specific time is placed on the face of the policy, then the beneficiaries, as a matter of practicality, would be unable to disprove the claims of the insurer.
We believe that the policy should be construed in favor of the insured and that the effective date and time of the life insurance coverage was 12:01 A. M. on May 2, 1975. Accordingly, the final summary judgment in favor of Union Fidelity is reversed and *1364 this cause is remanded with directions to enter summary judgment for the appellant.
REVERSED and REMANDED.
DOWNEY and GLICKSTEIN, JJ., concur.

. The reversal was for reasons not germane to the purpose for which the case is cited.