OPINION OF THE COURT
Fuchsberg, J.
In this declaratory action, the ultimate question is which of two liability insurance carriers, plaintiff-respondent Employers or defendant-appellant Firemen’s, was the one obligated to assume the cost of defending and paying claims for damages for injuries sustained by third parties in an automobile collision in which the operator of a motor vehicle and, through him, its owner, Hacker Oil Corporation, were involved.[1] The answer to the question requires interpretation of section 313 of the Vehicle and Traffic Law, a statute designed to circumscribe the freedom of insurers to terminate policies which motorists must carry to conform with our compulsory liability insurance requirements (Vehicle and Traffic Law, arts 6-8).
The factual background against which the case comes to us is essentially uncomplicated. The collision occurred on January 1, 1969. It is conceded that Firemen’s policy by its terms was due to expire more than two months earlier, on October 25, 1968. Before that date, Firemen’s notified Hacker’s insurance broker that it would not renew and, consistent with that advice, never billed for or received further premiums. For its part, the brokers issued a binder on behalf of Employers for replacement insurance. To avoid any time gap, the effective date of the new policy was specified as October 25, 1968 to coincide with that of the Firemen’s termination. The language of both policies spelled out identical liability coverage; as pertinent here, each was applicable to the "use of any [Hacker-owned] automobile” (emphasis ours).[2] Thereafter, me *611 morialization of the new insurance continued in binder form until Arpil 24, 1969, when Employers sent Hacker its long form policy specifying the year between October 25, 1968 and October 25, 1969 as the period during which it afforded protection.
When the parties injured in the accident sued the driver and Hacker, Employers, treating them as its assureds, undertook their defense and, later, after a verdict on the issue of liability, reached a settlement of the suit in the amount of $166,999.40. Employers now looks to Firemen’s to reimburse it for the moneys it expended in settlement and defense of the liability litigation. In doing so, it contends in the main that Firemen’s was still on the risk on January 1, 1969 because, when it elected not to renew, Firemen’s concededly neglected to give either Hacker or the Commissioner of Motor Vehicles the notices of termination referred to in section 313. Employers also relies on a melange of arguments alternating between the suggestion that its own coverage was not in place by January 1, 1969 and that, if it was, it did not include the accident vehicle.
These issues were confronted when Employers moved for summary judgment, whereupon Firemen’s requested like relief pursuant to CPLR 3212 (subd [b]). Special Term then declared that Firemen’s and not Employers was the insurer of the Hacker automobile at the time of the accident and directed an assessment of damages against Firemen’s. The Appellate Division affirmed the judgment entered thereon (55 AD2d 888).
 Having granted leave to appeal, we now reverse. The record unequivocally shows that Employers insured the Hacker vehicle at the time of the accident. A supervening policy of liability insurance terminates a prior insurer’s obligation to indemnify irrespective of the prior insurer’s noncompliance with the notice requirements of section 313 of the Vehicle and Traffic Law.[3]
In so holding, first we reject any notion that the Employers policy was not in force on January 1, 1969. Whether it was did not depend on the status of the Firemen’s coverage, i.e., whether its nonrenewal had gone into effect by that date. Subdivision 1 of section 313 tells us that the procurement of "another insurance contract” may terminate "the insurance *612 previously in effect with respect to any motor vehicles designated in both contracts”. Thus, the issuance of a second policy may be the condition on which the termination of the first becomes effective. That is consonant with the legislative concern that those injured as a result of the negligent operation of motor vehicles not go unrecompensed because of financial irresponsibility (Vehicle and Traffic Law, § 310, subd [2]). But such considerations do not obtain when a motorist purchases a second policy to cover a risk that is already protected by an earlier one. In that event, continued existence of the first policy may bring the second carrier a coinsurer, but does not end the second one’s coverage.
Moreover, if, as Employers alleges, Firemen’s, in notifying the commissioner of its coverage of the accident vehicle in an earlier year, had — accurately or inaccurately — classified it as though it were covered by a separate policy, that would not without more have narrowed the scope of either the subsequent Employers binder when it was issued in 1968 or its formal policy when that was transmitted to Hacker in April, 1969. At no time did Employers, whether through incorporation by reference or otherwise, limit its coverage to that of Firemen’s. Specifically, nothing else in the record supports the assertion that Firemen’s ever wrote an individual policy on the vehicle involved or, if it had, that Employers’ own contract, directly or by implication, excluded any automobile which Firemen’s may have insured separately.
The record gives no greater support to Employers’ agrument that the binders which preceded the policy’s delivery had created no enforceable contract as of January 1, 1969. Though the issuing agent’s deposition testimony indicates that he had not spoken to Employers about the October, 1968 binder until that December, the accident here did not occur until January, 1969. Employers did nothing to repudiate its coverage on either of these occasions. Instead, a second Employers binder continuing the new insurance followed a month after the accident. Very important is that Employers undertook, without reservation, to manage the defense of the liability suit. And perhaps most crucial is the unambiguous dating and language of the policy when it was finally issued to supplant the binder.
The conclusion dictated by these facts is reinforced by the very nature of insurance binders. Daily, important affairs and rights in our society are made to depend upon them. It is a *613 common and necessary practice in the world of insurance, where speed often is of the essence, for the agent to use this quick and informal device to record the giving of protection pending the execution and delivery of a more conventionally detailed policy of insurance. Courts, recognizing that the cryptic nature of binders is born of necessity and that many policy clauses are either stereotypes or mandated by public regulation, are not loath to infer that conditions and limitations usual to the contemplated coverage were intended to be part of the parties’ contract during the binder period (Matter of Seiderman v Herman Perla, Inc., 268 NY 188; Ell Dee Clothing Co. v Marsh, 247 NY 392).
All the greater is the reluctance to engage in hypercritical scrutiny of a binder, since the public interest, which exceeds that of the parties, is at stake. Here the paramount public interest as expressed by the Legislature is in the vindication of the rights of third parties, in this case those injured in the accident (Teeter v Allstate Ins. Co., 9 AD2d 176, 182, affd 9 NY2d 655). Against this public policy perspective and the factual backdrop of this case, the conclusion that Employers’ insurance was in effect on January 1, 1969 is too inescapable for it to have successfully withstood summary judgment (see Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 341).
Having found that Employers’ policy was in effect, we now must turn to section 313 of the Vehicle and Traffic Law to determine whether Firemen’s nevertheless remained on the risk as well. Subdivision 1 of that statute begins with an explicit statement that existing insurance shall not be terminated by the insurer’s cancellation or failure to renew until the passage of a specified time after the insurer mails a notice of termination to the named insured. Firemen’s gave no such notice. However, with equal clarity, subdivision 1 goes on to add an exception consisting of a clause that reads "provided, however, if another insurance contract has been procured, such other insurance contract shall, as of its effective date and hour, terminate the insurance previously in effect.”
We find no conflict or inconsistency in these provisions. On its face, the second of these clauses presents an alternative the consequence of which is that, when replacement insurance provides uninterrupted continuation of coverage from the instant of expiration of the pre-existing policy, the new insurer bears the risk exclusively.
Neither policy nor logic supports a contrary result. Aside *614 from affording members of the general public protection for injuries caused by errant motorists, the recognized purpose of subdivision 1 is to keep an insured from suffering immediate and perhaps unanticipated loss of his insurance and thereby of his automobile registration (Vehicle and Traffic Law, § 310, subd [2]; Providence Washington Ins. Co. v Security Mut. Ins. Co., 43 AD2d 213, 217 [Shapiro, J.]). Both these concerns are met when new coverage eliminating the possibility of an insurance-less period has been secured. The insured needs no notice when that has happened. Having already procured new insurance, he needs no time leeway in which to do so. Nor is notice of termination upon the initiative of the insurer a condition precedent to the right of the insured to substitute carriers. The insured is free to do so at will. It follows that, since the Employers insurance was placed with the intent of superseding the expiring policy, the Firemen’s coverage came to an end as a matter of law at that time notwithstanding its failure to give notice to its insured.
A contrasting picture is presented by Employers’ undertaking. One of the facts on which it premised its varied defenses was that its initial binder was for only 15 days. Subdivision 1 is not, however, limited in application to insurance contracts of any particular duration. Therefore, once Employers had stepped into the shoes of Firemen’s, unless the insured obtained still another substitute insurer, which did not happen here, the coverage created by the binder could not be terminated or canceled without the requisite statutory notice to Hacker. Employers never having sent such a notice at any time until its binder was subsumed by its own full policy in 1969, it never went off the risk during the period relevant to this case.
Finally, we note that while subdivision 2 of section 313 requires an insurer to provide the Commissioner of Motor Vehicles with notice of termination of coverage within 30 days of the date that it ends, the statute prescribes no penalty for failure to do so. Obviously, since the notice to the commissioner is not required to be given before the insurance has already terminated, it is not intended to further the public interest in insulating existing insurance from unheralded demise.
True, some cases have held that, where a terminated policy has not been superseded as provided by subdivision 1, a derelict insurer remains on the risk until notice is filed with *615 the commissioner, even if the policy period has ended (e.g., Matter of Kinahan v Fireman’s Fund Amer. Ins. Cos., 52 AD2d 846; but cf. Capra v Lumbermens Mut. Cas. Co., 31 NY2d 760). We need not pass on the correctness of such rulings, however, because we hold that where replacement insurance is actually obtained so as to continue coverage from the expiration date of the previous policy, the superseded insurer is relieved of the risk despite failure to notify the commissioner of termination of coverage.
Subdivision 2 itself contemplates that in the first instance ordinarily the terminated insurer will have "been advised by the commissioner that such insurance has been superseded by another insurance contract” and not the other way around. Furthermore, since there will then be no occasion for the commissioner to revoke the motor vehicle’s registration (see Vehicle and Traffic Law, § 312, subd 1), the purpose of the notice essentially will be informational only. It follows that, whatever the administrative action the commissioner may believe appropriate to bring compliance, in a case like the one before us there is no statutory warrant for either the imposition of liability on the superseded insurer or for a windfall for the one which took its place.
For all these reasons, the order appealed from should be reversed and summary judgment granted to Firemen’s declaring that its policy terminated on October 25, 1968 and that it has no liability with respect to the accident of January 1, 1969.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed, with costs, and summary judgment granted to defendant Firemen’s Fund Insurance Company in accordance with the opinion herein.
APPENDIX
313. Notice of termination.
1. No contract of insurance or renewal thereof for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer or failure to renew by the insurer until at least twenty days after mailing to the named insured at the address shown on the policy a notice of termination, except where the cancellation is for nonpayment of premium in which case ten days notice of cancellation by the insurer shall be sufficient, provided, however, if another insurance contract has been procured, such other insurance contract shall, as of its effective date and hour, terminate the insurance previously in effect with respect to *616 any motor vehicles designated in both contracts. Time of the effective date and hour of termination stated in the notice shall become the end of the policy period. Every such notice of termination for any such cause whatsoever sent to the insured shall include in type of which the face shall not be smaller than twelve point a statement that proof of financial security is required to be maintained continuously throughout the registration period and that failure to maintain such proof of financial security requires revocation of the registration of the motor vehicle, unless the registration certificate and number plates of such vehicle have been surrendered to the commissioner prior to the time at which the termination becomes effective.
2. Upon the termination of insurance by cancellation or failure to renew, notice of such cancellation or other termination shall be filed by the insurer with the commissioner not later than thiry days following the effective date of such cancellation or other termination. However, no insurer shall be required to file a notice of cancellation or other termination under this paragraph where the insurer has been advised by the commissioner that such insurance has been superseded by another insurance contract which took effect at or prior to the time at which the termination became effective, or where the insured has surrendered his registration certificate and number plates to the commissioner and has delivered to the insurer a copy of the notice indicating surrender at or prior to the time at which the termination became effective.

. The insureds, the broker who placed the insurance and those injured in the accident also were joined as defendants, but only the two carriers are parties to this appeal.

. The policies were for "Garage Liability Insurance”, under whose standard Automobile Hazard I provision the premium for liability insurance was not based on the number of automobiles owned or in charge of the name insured. Therefore, the motor vehicles covered, whose precise identification could not be known in advance, would not be listed.

. The pertinent text of the statute is appended to this opinion.