OPINION OF THE COURT
Herbert A. Posner, J.
Can an insurer be held liable to a third party for an accident involving a motor vehicle for which it has no record of ever authorizing a binder, ever receiving a premium, ever issuing a policy, and the accident occurred more than two months after the alleged binder was issued by the motorist’s broker? The answer to this question, of apparent first impression, is — Yes! However, I hasten to add the qualification— provided the binder issued by the broker was not for the insurer, but for the Assigned Risk Plan.
This unexpected conclusion resulted from a proceeding to stay arbitration of an uninsured motorist claim arising from an automobile accident that occurred on October 27, 1979 between a vehicle registered to Pedro Olivo and a vehicle registered to Pedro Lopez. The respondents in the proceeding, passengers in the Olivo vehicle, made the claim against State Farm Mutual Automobile Insurance Company, the insurer of *662 the Olivo vehicle. State Farm then instituted this proceeding to stay arbitration of that claim alleging, among other things, that the Lopez vehicle was insured by General Accident Fire and Life Assurance Company, Ltd. at the time of the accident. At State Farm’s request, General Accident was made an additional respondent and a hearing was ordered to determine if there was insurance covering the Lopez vehicle at the time of the accident. On motion of General Accident, Allstate Insurance Company was also made an additional respondent and the hearing was held before this court on May 8, and June 7, 1985.
FACTS
Allstate Insurance Company had originally issued a policy of insurance, pursuant to the Assigned Risk Plan, covering the Lopez vehicle, effective April 17, 1978 which expired April 17, 1979 and was renewed with an expiration date of April 17, 1980. A notice of cancellation for nonpayment of premium of this policy was mailed to the insured on May 2, 1979. This notice was found defective by this court because it failed to inform the insured of the right to appeal to a committee established pursuant to the plan as required by the rules of the Assigned Risk Plan. (New York Automobile Insurance Plan Rules § 19.)[1] Therefore, it did not effect a cancellation of the Allstate policy and that policy would normally have remained in effect on the date of the accident, October 27, 1979. (K & G Feathered Pets v Lo Presti, 100 AD2d 894; Daniel v Rivera, 93 AD2d 877.) However, it is now settled that, as stated in Vehicle and Traffic Law § 313 (l),[2] a "supervening policy of liability insurance terminates a prior insurer’s obligation to indemnify irrespective of the prior insurer’s *663 noncompliance with the notice requirements of section 313 of the Vehicle and Traffic Law.” (Employers Commercial Union Ins. Co. v Firemen’s Fund Ins. Co., 45 NY2d 608, 611.)
According to the Department of Motor Vehicles registration plate record (DP 37), the Lopez vehicle was registered on August 23, 1979 with the insurance code number 999 (Assigned Risk Plan) and this registration was not revoked until April 9, 1980, following the report of an uninsured accident. A microfilm of the daily register of the Assigned Risk Plan established that on August 29, 1979, the plan designated General Accident to issue an insurance policy effective August 25, 1979, covering the Lopez vehicle and sent his broker a card with a notification to that effect. Based on this evidence, Allstate contends that General Accident insured the Lopez vehicle on October 27, 1979 and that, therefore, Allstate’s obligation to indemnify was terminated.
General Accident claims that it did not receive notice of the assignment and never issued a policy covering the Lopez vehicle. In support of this contention, an employee of that company testified that she made a search of the records of assignments received from the Assigned Risk Plan by General Accident and found the name of Pedro Lopez listed five times, but each had a different address and vehicle from the Pedro Lopez in this case. She also testified that there was no record of any premium check having been received for a policy in the name of Pedro Lopez during the period August to December 1979.
CONCLUSION
The Assigned Risk Plan has been construed by the Court of Appeals to be "a detailed and comprehensive set of regulations governing the rights and liabilities of the parties entering into assigned risk contracts” which supplant, not supplement, "our common-law rules relating to insurance contracts”. (Aetna Cas. & Sur. Co. v O’Connor, 8 NY2d 359, 362.) Thus, the court held that the plan, "which in explicit terms provides only for prospective cancellation, abrogate^] the insurer’s common-law right to void a policy from its inception on the ground that it had been obtained through fraud or misrepresentation” (supra, at p 361). This court, therefore, must be governed by the rules of the plan in determining whether the Lopez vehicle was insured by General Accident at the time of the accident with the Olivo vehicle.
*664 Both the rules of the Assigned Risk Plan (§ 11F) and the Motor Vehicle Commissioner’s Regulations (15 NYCRR 32.13 [a] [2]) provide for the issuance by the producer of record (broker) of a "special temporary identification card * * * in the name of the New York Automobile Insurance Plan on behalf of an insurer to be designated by the plan.” These rules further provide that: "Coverage shall become effective upon the issuance of legal registration by an issuing office of this department or as designated by the plan in accordance with the rules of the plan.” (See, Aetna Cas. & Sur. Co. v Providence Wash. Ins. Co., 55 AD2d 924.) In the instant case, both the date the vehicle was registered, August 23, 1979, and the effective date designated by the plan, August 25, 1979, preceded the accident between the Olivo and Lopez vehicles. Therefore, unless receipt of the notice of assignment was a condition precedent to coverage, General Accident insured the •Lopez vehicle, although that company may never have received notice that it had been designated as the insurer, never received any premium and never issued a policy of insurance.
The rules of the Assigned Risk Plan provide that a risk applying for coverage "must submit the prescribed application form to the plan in duplicate accompanied by the appropriate deposit premium” (§ 11A). Then "if the application form shows that the applicant is eligible for coverage, the Plan shall designate an insurer to which the risk shall be assigned” (§ 12A). The applicant may refuse to accept the policy from the designated insurer, in which event section 12A provides for return of the unearned premium, but there is no provision for rejection of an applicant by the designated insurer, since participation in the plan is mandatory for the insurer. (Insurance Law § 5301 [formerly § 63]; also see, Panepinto v Allstate Ins. Co., 108 Misc 2d 1079.) In fact, even if the plan determines "that the risk is ineligible for coverage” it is nevertheless required by section 11F-5 to "assign the risk to an insurer and advise such insurer that it shall cancel its policy in accordance with the provisions of Section 18-2”, i.e., "by giving notice as required in the policy or binder.”
Clearly, the rules of the Assigned Risk Plan not only provide for the involuntary assignment of coverage to an insurer but the coverage can be made effective before the insurer receives notice of the assignment. Therefore, in this case, coverage became effective, at the very latest, on August 25, 1979, the date designated by the Assigned Risk Plan pursuant to section 12 of its rules. Any other conclusion is dispelled by section 15 of the plan rules which sets forth performance *665 standards under the Assigned Risk Plan. It provides that: "The Plan assignment notice constitutes a binder of the proper coverage applied for in the application. The company must mail an appropriate policy within 30 days of the assignment date.” Thus, the plan can bind the insurer in the same manner as an agent. In this case, a card was sent to the broker by the plan, indicating that General Accident had been designated to issue a policy of insurance effective August 25, 1979.[3]
In Employer’s Commercial Union Ins. Co. v Firemen’s Fund Ins. Co. (45 NY2d 608, 612-613, supra), the court observed that a binder created an enforceable contract which bound the named insurer and, as a matter of law (Vehicle and Traffic Law § 313 [1]), terminated the insurance previously in effect, notwithstanding the failure to give the required notice of cancellation. Furthermore, according to that decision (p 614), Vehicle and Traffic Law § 313 (1) "is not * * * limited in application to insurance contracts of any particular duration.” Therefore, once General Accident "stepped into the shoes” of Allstate, "unless the insured obtained still another substitute insurer * * * the coverage created by the binder could not be terminated or canceled without the requisite statutory notice to [Lopez]” (45 NY2d, at p 614). Accordingly, this court finds that regardless of whether it received the notice of assignment and, although it never issued a policy, General Accident was the insurer of the vehicle owned by Pedro Lopez on October 27, 1979 when it was involved in an accident with a vehicle owned by Pedro Olivo.
This conclusion may seem harsh on General Accident but one must bear in mind that the paramount public interest is in the vindication of the rights of third parties (in this case those injured in the Olivo vehicle). That is the main purpose for the establishment of the Assigned Risk Plan. (Employer’s Commercial Union Ins. Co. v Firemen’s Fund Ins. Co., supra, at p 613.)
The application by petitioner, State Farm, to stay arbitration is granted and the additional respondent, General Accident Fire and Life Assurance Company, Ltd,, is directed to defend its insured, Pedro Lopez, in any action arising out of the accident that occurred on October 27, 1979.

. References are to the Rules of New York Automobile Insurance Plan in effect at the time of the accident.

. The statute provides that: "No contract of insurance for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer until at least twenty days after mailing to the named insured at the address shown on the policy a notice of termination by regular mail, with a certificate of mailing, properly endorsed by the postal service to be obtained, except where the cancellation is for non-payment of premium in which case fifteen days notice of cancellation by the insurer shall be sufficient, provided, however, if another insurance contract has been procured, such other insurance contract shall, as of its effective date and hour, terminate the insurance previously in effect with respect to any motor vehicles designated in both contracts” (Vehicle and Traffic Law § 313 [1] [a]; emphasis added).

. Ironically, while this card was introduced into evidence by petitioner (State Farm), it was obtained by General Accident as a result of an investigation made by General Accident to ascertain the facts.