BOSTON OLD COLONY INSURANCE
COMPANY, Plaintiff,

v.

LUMBERMAN'S MUTUAL CASUALTY
COMPANY, Defendant.

No. 86 Civ. 8672 (KTD).

United States District Court,
S.D. New York.

Feb. 6, 1989.

Alio and Caiati, New York City, for plaintiff; John J. McDonough, of counsel.

Alexander, Ash, Schwartz & Cohen, P.C., New York City, for defendant; Harvey J. Kaufman, of counsel.

MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

This diversity action is brought by plaintiff Boston Old Colony Insurance Company ("Boston") against defendant Lumbermen's Mutual Casualty Company ("Lumbermen's") to determine their respective obligations arising out of an automobile accident. Both parties move for summary judgment pursuant to Fed.R.Civ.P. 56. Lumbermen's also moves for attorneys fees pursuant to Fed.R.Civ.P. 11. For the following reasons Boston's motion for summary judgment is granted.

### FACTS

On December 24, 1981, Lumbermen's issued a policy providing for liability coverage with respect to accidents involving a Volkswagen automobile owned by Dr. Eugene Bodian. In the summer of 1982, Bodian decided to change insurance brokers to a general insurance broker. The new broker placed a policy of liability insurance for Bodian with Boston, including coverage for accidents involving the Volkswagen vehicle. The policy was to go into effect at 12:01 a.m. on August 31, 1982. In the application for insurance issued by Boston, which Bodian filled out on August 23, 1982, Bodian indicated that Lumbermen's was the "previous" carrier of liability with respect to the Volkswagen.

Bodian paid insurance premiums to Lumbermen's on an installment basis, but did not make premium payments called for by bills sent by Lumbermen's during the months of July and August, 1982. However, Bodian had paid premiums on the Lumbermen's policy through and including October 3, 1982.

On or about August 9, 1982, Lumbermen's sent Bodian a notice that his policy would be cancelled for failure to make the premium payments. This document, entitled "Statement of Account," indicated that the policy was scheduled for cancellation effective October 3, 1982.

The policy issued by Boston became effective at 12:01 a.m. on August 31, 1982.

In the afternoon that day, the Volkswagen automobile, driven by Bodian's wife, was involved in an accident in which a passenger in the automobile suffered personal injuries.

After claims for the August 31, 1982, accident were filed, Lumbermen's indicated that it would cover 50 percent of any liability assessed against the Bodians up to its reserve, as well as 50 percent of the no-fault bills for Mrs. Bodian and her passenger. In fact, during 1983 Lumbermen's paid Boston a 50 percent reimbursement of the no-fault bills for the passenger.

Up until the trial of the liability portion of the passenger's claims against the Bodians in January 1986, which was defended by Boston, Lumbermen's remained willing to contribute up to $50,000 in settlement of the claims. On January 23, 1986, the action was settled by payment of $480,000 from Boston to the passenger. On November 24, 1986, Lumbermen's sent a letter to Bodian disclaiming any liability under its policy.

Boston now looks to Lumbermen's to partially reimburse it for the moneys it expended in the settlement and defense of the liability litigation. Lumbermen's claims that pursuant to § 313(1)(a) of New York's Vehicle and Traffic Law its policy was terminated as of the start of coverage by Boston at 12:01 a.m. on August 31, 1982.

## DISCUSSION

Section 313(1)(a) provides, in part:

1. (a) No contract of insurance for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer until at least twenty days after mailing to the named insured at the address shown on the policy a notice of termination by regular mail, with a certificate of mailing, properly endorsed by the postal service to be obtained, except where the cancellation is for nonpayment of premium in which case fifteen days notice of cancellation by the insurer shall be sufficient, provided, however, if another insurance contract has been pro-

cured, such other insurance contract shall, as of its effective date and hour, terminate the insurance previously in effect with respect to any motor vehicles designated in both contracts....

N.Y.Veh. & Traf.Law § 313(1)(a) (McKinney 1986). Section 313 was passed as part of the Financial Security Act ("FSA"). The FSA was intended both to ensure that innocent victims of motor vehicle accidents are recompensed for their injuries and to protect an insured from sudden and perhaps unauthorized loss of insurance and thereby of automobile registration. N.Y.Veh. & Traf.Law § 310(2) (McKinney 1986); *Employers Commercial Union Ins. Co. v. Firemen's Fund Ins. Co.*, 45 N.Y.2d 608, 613–14, 384 N.E.2d 668, 671, 412 N.Y.S.2d 121, 125 (1978).

Lumberman's argues that its policy of insurance was effectively cancelled under § 313(1)(a) because that section provides that "where the cancellation is for nonpayment of premium ..., if another insurance contract has been procured, such other insurance contract shall, as of its effective date and hour, terminate the insurance previously in effect with respect to any motor vehicles designated in both contracts."

This argument ignores the fact that the exception from the § 313(1)(a) requirement of notice for cancellation for non-payment of premium applies only after the elapse of time for which premiums were paid. Thus, where an insured replaces, rather than supplements, one company's policy with another the replaced policy terminates when the replacement policy goes into effect. Such is not the situation here.

Bodian did not demand a repayment of the unused premium so as to indicate that Boston's coverage was replacing Lumberman's coverage. Moreover, Lumberman's did not act as if its policy had been replaced. As of August 31, 1982, the date of the accident, Lumberman's had neither cancelled or attempted to cancel Bodian's policy for failure to pay premiums nor notified Bodian or his agent that the policy would not be renewed. Lumbermen's has never refunded to Bodian the premiums covering

the policy between August 31, 1982, and October 3, 1982.

While it appears that Bodian intended to cancel his insurance with Lumbermen's as of August 31, 1982 (when Boston's policy went into effect), he never gave formal notice to Lumbermen's advising them of this fact. At no time did Bodian surrender his policy to Lumbermen's or request a refund of his premiums for the period between August 31 and October 3, 1982.

Indeed, Bodian's unexpressed intent to cancel the Lumberman's policy and his non-payment of premiums are insufficient to constitute notice of cancellation to Lumberman's. *See Providence Washington Ins. Co. v. Security Mutual Ins. Co.,* 35 N.Y.2d 583, 324 N.E.2d 134, 364 N.Y.S.2d 479 (1974). In *Providence,* unlike here, the accident occurred after the normal expiration of the original policy. Yet, the New York Court of Appeals held:

> Regardless of the insured's intentions, notice of cancellation to the insurance company is required to effect a cancellation. ... The invidious consequence of permitting insurance companies to treat a policy as canceled when an insured suggests to a broker, not the insurance company's agent, that he is disenchanted and looking elsewhere, is readily apparent. Even where the insured does intend to cancel the policy, and is in the process of obtaining substitute coverage, notice is required to fix the date when the old policy will terminate. Otherwise, there may be a gap in coverage. Especially, with respect to automobile liability insurance, public policy forbids such a result. Moreover, in the technical realm of insurance law, the notice rule is a fixed point on which both insureds and insurers have relied, may rely, and should be able to continue to rely.

35 N.Y.2d at 584, 324 N.E.2d at 136, 364 N.Y.S.2d at 481.

Excess liability insurance is not prohibited by § 313(1)(a), and an insured is not prevented from obtaining coverage for the same loss under more than one liability policy. *See Goodman v. Allstate Ins. Co.,* 137 Misc.2d 963, 523 N.Y.S.2d 391 (Sup.Ct.

Nassau Cty.1987). Lumbermen's relies primarily on *Employers Commercial* for the proposition that a supervening policy of liability insurance terminates a prior insurer's obligation to indemnify, despite the prior insurer's noncompliance with the notice requirements of § 313(1)(a). That case, however, specifically limited its holding to the situation where "replacement insurance is actually obtained so as to continue coverage from the expiration date of the previous policy." 45 N.Y.2d at 615, 384 N.E.2d at 672, 412 N.Y.S.2d at 125. Its facts are clearly distinguishable. There the insured's insurance broker was notified that the first insurer would not renew, the first insurer never billed for or received further premiums, and the broker issued a binder on behalf of the second insurer for replacement insurance, which was specifically to come into effect simultaneously with the termination of the first insurance policy.

Thus, Boston's motion for summary judgment is granted and Lumbermen's motions for summary judgment and attorneys fees is denied. Submit formal judgment on five (5) days' notice within ten (10) days of the date hereof.

SO ORDERED.