OPINION OF THE COURT
Edward H. Lehner, J.
The central issue before me is whether an endorsement to an *56 insurance policy which limited recovery for physical loss of rented equipment to property covered by a “written lease or rental agreement” is enforceable with respect to a loss that occurred after the effective date of the endorsement but prior to the delivery of the actual policy amendment to the insured.
Plaintiff, Hartford Fire Insurance Company (Hartford), moves for summary judgment in its favor declaring that the loss at issue is not covered. Defendants George Málvese & Co., Inc. (Málvese) and John Deere Insurance Company (Deere) cross-move for summary judgment on their claim seeking a direction that Hartford disburse to Deere certain insurance proceeds payable to Douglas Avenue Recycling, LLC (Douglas) and/or Triple M. Associates, Inc. (Triple M.).
Hartford had issued a policy of insurance to Bonsera, Inc. (Bonsera) for a period from November 29, 1995 to November 29, 1996, on which Douglas was a named insured. The policy provided coverage for physical loss of property “owned” by the insured, but excluded property that was rented, hired or leased from others. The policy listed the covered property.
By application dated June 18, 1996, Douglas requested that Hartford “add equipment Leased/Rented from others at $200,000 limit”. By endorsement effective June 18, 1996, the aforesaid policy was changed to cover “leased or rented” equipment. The endorsement stated that it was subject to an attached modification of the policy relating to leased or rented equipment, which provided that the covered equipment “must be leased or rented under a written lease or rental agreement or we will not pay for loss of such equipment”.
Plaintiff has stated that it is undisputed that: (i) on or about June 16, 1996, Triple M. entered into an oral agreement to rent equipment, known as a screener, to Douglas; (ii) on or about July 1, 1996, Triple M. issued to Douglas an invoice in the amount of $10,716.75 for the rental of the screener for the aforesaid one-month period; (iii) on or about July 1, 1996, the screener was stolen from a locked yard on Douglas’ premises; and (iv) on or about July 5, 1996 Douglas notified Hartford of the loss and made claim under the policy in the sum of $130,000. Although plaintiff indicated that it is undisputed that the theft occurred on or about July 1, it is noted that a letter from Deere dated February 20, 1997 states that the theft occurred on June 20, 1996.
Triple M., which had leased the property from Málvese (the owner thereof), has asserted that the endorsement containing the limitation on coverage to equipment subject to a “written *57 lease or rental agreement” was not delivered until after the loss. This contention is not disputed by plaintiff. Ed Morales, a defendant and the president of Triple M., asserts that he was present at the time Douglas sought coverage for the rented screener and that “it was not brought to anyone’s attention that a written rental agreement was necessary for coverage to take effect”. Further, Triple M. asserts that the invoice dated July 1, 1996, although not signed by either party and merely stating the rental period (one month) and the rental price ($9,000 plus tax), constitutes a “written lease”, as that term is employed in the aforesaid endorsement. Neither Bonsera nor Douglas has appeared herein.
No proof of any signed binder was submitted. However, plaintiff acknowledges that coverage was effective as of June 18 in accordance with the aforesaid written application of Douglas.
With respect to binders, the Court in Employers Commercial Union Ins. Co. v Firemen’s Fund Ins. Co. (45 NY2d 608, 613 [1978]) wrote: “Courts, recognizing that the cryptic nature of binders is born of necessity and that many policy clauses are either stereotypes or mandated by public regulation, are not loath to infer that conditions and limitations usual to the contemplated coverage were intended to be part of the parties’ contract during the binder period”.
In Ell Dee Clothing Co. v Marsh (247 NY 392, 396 [1928]), it was stated that imported into a binder “are all the obligations ‘according to the terms of the policy in ordinary use by the company’ ” (quoting Sherri v National Sur. Co., 243 NY 266, 270 [1926]), and that: “If the form of the policy is fixed by the State, then its provisions are held to be included in any binder. If there is proof that the company has adopted any particular and customary form the same thing is true. But it is for the company to show this fact.” (Emphasis supplied.)
Applying the above-quoted language from Employers Commercial (supra) in the case of Westchester Resco Co. v New England Reins. Corp. (648 F Supp 842, 845-846 [SD NY 1986], affd 818 F2d 2 [2d Cir 1987]), Judge Sweet wrote: “Indeed, in the species of cases in which an accident occurs after the binder has been issued but before the policy has, courts will infer that the binder is conditioned by the ‘limitations usual to the contemplated coverage,’ on the assumption that ‘many policy clauses are either stereotypes or mandated by public regulation.’ * * * In essence, the Court of Appeals has determined that there are two distinct types of terms in an insurance *58 contract: the terms unique to the deal, over which the parties bargain and memorialize in a binder; and the terms that are the ‘usual’ or ‘stereotypical’ conditions and limitations, which are not bargained over and which are spelled out fully for the first time in the policy.” In Progressive Cas. Ins. Co. v C.A. Reaseguradora Nacional (802 F Supp 1069, 1076 [SD NY 1992], revd on other grounds 991 F2d 42 [2d Cir 1993]), Judge Haight stated the following with respect to the Court of Appeals decision in Employers Commercial'. “I interpret Employers to mean that if terms may fairly be characterized as ‘usual’ or ‘stereotypical,’ they form a part of the policy even if not referred to in the binder; if not, not.”
A policy of insurance represents a contract between the insured and the insurer. Like any other contract, a meeting of the minds with respect to the terms is essential. The application here, made on June 18, 1996, was to add coverage for equipment leased or rented from others. There is nothing in the record to indicate that any of the interested parties were made aware that coverage would not apply absent a written lease. Nor is there anything in the record to indicate that such limitation on coverage for rented equipment is standard in the industry or in policies issued by plaintiff.
Accordingly, I conclude that unless it can be shown that the insured knew or should have known (by reason of the fact that the provision is a usual condition in providing coverage with respect to rented property) that coverage would not apply unless the property was identified in a written lease, the insured should not be bound by such a provision prior to receipt of the actual policy endorsement. Thus, based on the papers submitted, an issue of fact is presented as to whether the limitation contained in the endorsement is enforceable so as to deny coverage for the loss involved herein. In light of the above, the motion and cross motion are both denied.