CLARA H. LOWER, PLAINTIFF, v. METROPOLITAN LIFE
INSURANCE COMPANY, DEFENDANT.

Decided November 15, 1932.

For the plaintiff, *Quinn, Parsons & Doremus.*

For the defendant, *Clifford I. Voorhees.*

LAWRENCE, C. C. J. This suit was submitted to me, without a jury, at the Monmouth Circuit, for determination on a stipulation of the facts. The circumstances involved are that Francis T. Lower, fifty years of age, a laborer in the employ of one Raub, was, on August 4th, 1930, the holder of a so-called double indemnity policy, theretofore issued to him by the defendant company, and in force, covering life insurance in a stated amount and a like sum in case of death, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means. August 4th, 1930, was evidently a torrid day, and in the morning he had been working out of doors at his usual employment, which he resumed after his mid-day meal. At two o'clock, the temperature registered ninety-four degrees Fahrenheit. Sometime during the afternoon he suffered a sunstroke, from the effects of which he died.

Plaintiff, as the beneficiary named in the policy, filed proof of death, in due course, and claimed not only the sum for which her husband was insured on his life, but the additional sum under the supplementary contract, attached as a rider and labeled "accidental death benefit—benefit payable in the event of death from accident as herein limited and provided."

Defendant paid the former, but declined as to the latter sum on the ground that death was not the result of bodily injuries sustained through external, violent and accidental means, directly and independently of all other causes. In other words, the position of the company is that sunstroke is a disease likely to affect individuals of reduced vitality who expose themselves to excessive heat and is not a bodily injury within the intent and meaning of the policy in question.

The controversial provisions of the contract are that the company "hereby agrees to pay to the beneficiary or beneficiaries of record under said policy, in addition to the amount payable according to the terms of the said policy, the sum of one thousand dollars, upon receipt, at the home office of the company in the city of New York, of the proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means; provided, * * * (5) that death shall not have been the result of self-destruction, whether sane or insane, or caused by or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity * * *."

The question, therefore, is whether the sunstroke which occasioned the death of the insured was a bodily injury within the scope of the contract. The case must rest on the legal interpretation of the clauses quoted, and the evidence disclose that death resulted from a bodily injury, directly and independently of all other causes. *Runyon* v. *Monarch Accident Insurance Co.,* 108 *N. J. L.* 489; 158 *Atl. Rep.* 530, and *Runyon* v. *Commonwealth Casualty Co.,* 109 *N. J. L.* 238; 160 *Atl. Rep.* 402.

It is to be observed that there is nothing in the contract listing sunstroke as a bodily injury subject to coverage by its terms, such as is generally found in those policies which have been judicially construed as payable when death results therefrom. This may be regarded as significant of the trend of decisions in the various states holding the right of the beneficiary to recover and in those adopting the contrary view in the absence of such a provision. *Richards* v. *Standard Accident Casualty Co.,* 17 *A. L. R.* 1185; *Continental Cas-*

*ualty Co.* v. *Bruden,* 61 *Id.* 1192; *Elsey* v. *Fidelity and Casualty Co.,* 120 *N. E. Rep.* 42, 43; *Gallagher* v. *Fidelity and Casualty Co.,* 163 *App. Div.* (*N. Y.*) 556; *Bryant* v. *Continental Casualty Co., L. R. A.* (1916) E-945; *Nickman* v. *New York Life Insurance Co.,* 39 *Fed. Rep.* (2d) 763; 55 *N. J. L. J.* 187; *Paist* v. *Aetna Life Insurance Co.,* 54 *Fed. Rep.* (2d) 393; *Sinclair* v. *Maritime Passengers Association,* 3 *El. & E.* (*Eng.*) 478; *Dozier* v. *Fidelity and Casualty Co.,* 46 *Fed. Rep.* 446; 13 *L. R. A.* 114; *Semancik* v. *Continental Casualty Co.,* 56 *Pa. Sup. Cl.* 392; *Cln. Cas. Co.* v. *Pittman,* 89 *S. E. Rep.* 716, and 1 *C. J.* 429.

Sunstroke is indicated as an inflammatory disease of the brain, brought on by exposure to the too intense heat of the sun's rays or to over-heated air; the combination of a group of phenomena comprising the incidence of the sun's rays, the reaction of the central nervous system, the engorgement of the blood vessels of the brain and other physical effects. *Bryant* v. *Continental Casualty Co., supra,* and *Paist* v. *Aetna Insurance Co., supra.*

In the Bryant case, frequently referred to as an authority for the right of the beneficiary to recover, it appeared that the policy included sunstroke as within the range of fatalities intended to be covered, and the decision was apparently based on that fact. At page 948 of the text, however (*L. R. A.* (1916) E), it was said: "In the early Sinclair case, decided in England in 1861, it was held that no liability arose from an ordinary sunstroke under an accident insurance policy providing for indemnity in the event of 'personal injury from, or by reason or in consequence of, any accident, etc.' In the decision, sunstroke was treated as a disease. So considered, it has no quality of personal injury about it, as already stated and, under that theory, the determination that there was no liability under the policy was sound. This holding was followed by the Dozier case, where the policy was in the same general terms providing insurance against 'bodily injuries, sustained through external, violent and accidental means,' as does the general clause of the present policy. In neither case did the policy designate sunstroke as a risk. It is to be assumed that the present policy was drawn in the

light of that holding. That the purpose was to make sunstroke a part of the contract risk, as a distinct feature of the policy, is evident. We regard it as equally manifest that the purpose also was to make it a feature of the risk in such a way as to avoid the effect of the holding in the Sinclair case and others like it—under which, if treated as a disease, it would not fall within the general risk of the policy—and as would be, at the same time, consistent with such risk as expressed in the general insuring clause, and in harmony with the theory of such insurance. This could only be done by in the policy recognizing it to be what in the common understanding it is considered, a form of personal injury, and, when suffered under certain circumstances, a casualty. Such we hold is the meaning and force of the sunstroke provision of the policy."

In the Dozier case (13 *L. R. A.* 114), the pathology of sunstroke was discussed, and it was held that it was not a bodily injury sustained through external, violent and accidental means, within the meaning of an insurance policy covering such injuries, but expressly excluding liability for any disease or bodily infirmity.

Considering these deliverances as to the pathologic nature of sunstroke when sought to be brought within the provisions of a contract of insurance such as those which give rise to the present suit, the conclusion is that no adequate proof has been offered that the death of the insured was the result, directly and independently of all other causes, of a bodily injury sustained through external, violent and accidental means, and that it was not caused by or contributed to, directly or indirectly, or wholly or partially, by disease.

A judgment in favor of defendant and against plaintiff of no cause may be entered, but without costs.