32 N.J. Super. 138 (1954)
108 A.2d 32
CLARK-McCAFFREY FURNITURE AND SUPPLY CO., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1954.
Decided September 24, 1954.
*139 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Samuel Rosenfeld argued the cause for plaintiff-respondent.
Mr. Philip M. Lustbader argued the cause for defendant-appellant (Messrs. Schneider & Schneider, attorneys).
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
Appeal is taken by defendant from an adverse verdict and judgment entered thereon resulting from the action of the County Court in granting plaintiff's motion for direction of verdict and in denying defendant's motion for judgment of dismissal. The trial court's actions were based on a finding that there were no disputed questions of fact which could properly be submitted to the jury.
Plaintiff brought suit for recovery under mercantile open stock burglary policy, issued by defendant to plaintiff. Plaintiff suffered a burglary loss in the amount of $2,322.06 on March 8 or 9, 1953 between the hours of 6:30 P.M. and 6:30 A.M. and within the policy period. The defendant denied liability under the terms of the policy wherein, under conditions and limitations, is stated:
"E. Exclusions.
The company shall not be liable for loss or damage * * * (4) contributed to by any change in the condition of the risk; * * *."
The facts elicited at the trial showed that plaintiff operated a retail appliance store which premises occupied a series of addresses, No. 173-175, 177 and 181 Van Houten St. with No. 181 being the corner store in the City of Paterson, New *140 Jersey. Plaintiff's stores at No. 177 and No. 181 were separated by a store at No. 179 which was not insured by defendant at the time of the burglary.
A common party wall existed between No. 179 and No. 181, pierced by five windows of which only one was visible and that only from the No. 181 side, with the No. 179 side appearing as a completely smooth wall. The premises at No. 179 were covered with sheet rock, leaving no window openings at all on the wall bordering No. 181. On the 181 side of the common wall the construction was masonry with cinder blocks on the inside covered with fir strips and then plastered. On the 181 side of the wall the plastered fir strips covered all windows in the masonry except the fifth window at the far rear of the store. This window was six feet wide and five feet high, resting on solid masonry construction about three and one-half feet from the floor.
Beginning in February 1953 the wall was torn down to the floor level at all of the windows so as to permit walking through from No. 179 to No. 181. Plaintiff planned to use both stores for its business. Openings were made by removing the four windows spaced about four feet apart and the portions of wall beneath the windows to the floor level, all of which had been covered with paper-covered plaster board, referred to as "knotty pine finished sheet rock." Before doing this work the builder made barricades on the No. 181 side of the wall to cover the openings. These barricades were built of 2" x 4"s securely covered with plywood squares from the floor to the ceiling. Thus, prior to the construction work the wall between No. 179 and No. 181 was, to the eye, a smooth solid wall from both sides, whereas and while the barricades were up the 2" x 4"s and the plywood boards attached to them were clearly visible from No. 179 side of the wall.
Police testimony was that plaintiff's premises at No. 181 were burglarized, that entry thereto had been made by breaking through a rear window of No. 179, entering No. 179, going to the barricade and forcing the plywood away from the 2" x 4"s by an instrument. Police and other testimony *141 indicated that hammer and crow-bar marks were visible at the points of separation.
The burglary and the amount of loss were not disputed. The single defense was based upon the above quoted provision of the policy. Before us defendant argues that on the above stated facts the defense was established as a matter of law or that, in the alternative, the cause should have been submitted to the jury.
We hold that reversible error was committed in that it was solely within the province of the jury on the above admitted facts to decide whether or not the alteration work resulted in a "change in the condition of the risk" within the contract provision and if so whether or not such work contributed to the burglary loss. Downs v. New Jersey Fidelity & Plate Glass Ins. Co., 91 N.J.L. 523, 525 (E. & A. 1918).
In Schneider v. New Amsterdam Casualty Co., 22 N.J. Super. 238, 242 (App. Div. 1952) this court said:
"It is, of course, the almost universal rule that insurance contracts must wherever possible be liberally construed in favor of a policy holder or beneficiary thereof, and strictly construed against the insurer in order to afford the protection which the insured sought in applying for the insurance. Snyder v. Dwelling House Insurance Co., 59 N.J.L. 544 (E. & A. 1896); Cohen v. Mutual Benefit Health and Accident Ass'n, 134 N.J. Eq. 499 (Ch. 1944); cf. Caruso v. John Hancock Mutual Life Ins. Co., 25 N.J. Misc. 318 (Sup. Ct. 1947), affirmed 136 N.J.L. 597 (E. & A. 1948). If the meaning of the words employed is doubtful or uncertain, or if for any reason any ambiguity exists either in the policy as a whole or in any portions thereof, the insured should have the benefit of a favorable construction in each instance. Harris v. American Casualty Co., 83 N.J.L. 641 (E. & A. 1912); Kissinger v. North American Union Life Assur. Society, 108 N.J.L. 405 (E. & A. 1932); Weiss v. Union Indemnity Co., 107 N.J.L. 348 (E. & A. 1931). And if the policy contains inconsistent or conflicting provisions, the courts will give effect to the provision which gives the greater benefit to the insured. Nuzzi v. United States Casualty Co., 121 N.J.L. 249 (E. & A. 1938). Where, from the language of the policy, it is possible to adopt either of two reasonably consistent interpretations, that construction will be adopted which permits recovery, rather than the one which would deny coverage. Lower v. Metropolitan Life Ins. Co., 111 N.J.L. 426 (E. & A. 1933), reversing 10 N.J. Misc. 1236 (Sup. Ct. 1932); Fleming v. Connecticut General Ins. Co., 116 N.J.L. 6 (E. & A. *142 1935); Krieg v. Phoenix Ins. Co., 116 N.J.L. 467 (E. & A. 1936), reversing 13 N.J. Misc. 555 (Sup. Ct. 1935); cf. Jorgensen v. Metropolitan Life Ins. Co., 136 N.J.L. 148 (Sup. Ct. 1947). 13 Appleman, Insurance Law and Practice (1943), § 7401, p. 50; 1 Couch, Cyclopedia of Insurance Law (1929), § 188, p. 392.
In the absence of a statute to the contrary, an insurance company has the right to impose whatever conditions it chooses on its obligations, not inconsistent with public policy, and the courts may neither add thereto nor detract therefrom. Exceptions, exclusions or reservations in an insurance policy will be construed in accordance with their language and the usual rules governing the construction of insurance contracts."
The intention of the parties is the cardinal principle in construing and interpreting an insurance contract. 29 Am. Jur., Insurance, p. 172, sec. 157. Defendant argues that the provision "change in the condition of the risk" means "change in the condition of the premises." Plaintiff argues that "risk" in this case was the burglary, i.e., the peril or hazard insured against, and that plaintiff did nothing to enhance the happening of the "risk."
The jury might agree with defendant that the parties contracted to keep the premises in the same physical condition at all times in order to stabilize the protection against burglary. Then, too, the jury might agree with plaintiff's interpretation and find that the alterations were immaterial unless the burglary was facilitated by the changes. Whether the risk was increased by the alteration work is a question for the jury. Jennings v. Pinto, 5 N.J. 562, 569 (1950); Schenck v. Mercer County Mutual Fire Ins. Co., 24 N.J.L. 447, 450 (Sup. Ct. 1854); Gilman v. Commonwealth Ins. Co. of New York, 112 Me. 528, 92 A. 721, 724, L.R.A. 1915c, 758 (Sup. Jud. Ct. 1914), 28 A.L.R.2d 757, 763.
The cause is remanded with costs to abide the outcome of the retrial.