265 N.J. Super. 454 (1993)
627 A.2d 710
AFFILIATED FM INSURANCE COMPANY, PLAINTIFF,
v.
THE KUSHNER COMPANIES AND BRUCKNER PLAZA ASSOCIATES, DEFENDANTS, AND THE GENERALI INSURANCE COMPANY OF TRIESTE AND VENICE, COUNTERCLAIMANT AND INTERVENOR.
Superior Court of New Jersey, Law Division, Essex County.
Decided April 16, 1993.
*458 Thomas V. Hildner, for plaintiff (Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, attorneys).
Alan H. Bernstein, for defendant (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys).
Donald G. Sweetman, for intervenor and counterclaimant (Tell, Cheser & Breitbart, attorneys).
FUENTES, JULIO M., J.S.C.
This action was commenced by plaintiff, a New Jersey insurance carrier, for a declaratory judgment that it is not liable for a major fire loss sustained by the Bruckner Plaza Shopping Center located in New York on June 21, 1988. The building was owned by a real estate investment partnership. Although insurance coverage had been requested by one of the partners sometime in May of 1988, coverage was not bound until June 27, 1988, (after the fire) effective June 17 (prior to the fire). One, possibly two partners knew of the fire when it occurred but did not advise the partner applying for insurance. The primary issue is whether plaintiff's insurance binder was intended to cover defendants' loss which occurred prior to the date the policy was issued.
The plaintiff, Affiliated FM Insurance Company (Affiliated), filed this action against the property owners, the Bruckner Plaza Associates (Bruckner), and its parent company, the Kushner Companies, claiming that its policy was not intended to cover defendants' loss because it was a known loss which Bruckner failed to reveal. Bruckner agrees with Affiliated that it was aware of the *459 fire before coverage was bound. However, Generali Insurance Company of Trieste and Venice (Generali), which had an existing policy on the building on the date of the loss, has intervened and claims that Affiliated's retroactive policy was valid. According to the intervenor, in the event Affiliated's policy is deemed to cover Bruckner's loss, under New York law, it must provide approximately 95% of the total coverage. Generali would contribute the remaining 5%. On the other hand, if Affiliated's policy is voided, Generali pays the total loss. See New York Insurance Law, 3404; Continental Ins. Co. v. Commercial Union Ins. Co., 27 A.D.2d 333, 278 N.Y.S.2d 995, 998 (1967).
This case was tried without a jury. Virtually all the material facts have been stipulated. In 1987, Bruckner Plaza Associates purchased the Bruckner Plaza shopping center. Harry Skydell was the managing partner for Bruckner Plaza Associates. Skydell's company, Hudson Park Management, a real estate management firm, managed the property for the partnership. Hudson Park had previously obtained insurance for the Bruckner Plaza location from the intervenor, Generali, effective September 1987. In addition to being a partner in Bruckner Plaza Associates, Skydell was president and sole shareholder of Hudson Park Management. In the Spring of 1988, Bruckner applied through the Feldman Agency, a retail broker, for property insurance coverage on 29 other properties that it owned. Feldman, in turn, used another broker, Continental Coverage Corporation, a wholesale broker, to obtain the coverage from Affiliated. On May 20, 1988, Affiliated issued a property insurance policy effective May 9, 1988 covering these properties.
Soon after Affiliated's policy was issued, Richard Stadtmauer, a general partner in the Bruckner Plaza group, called Skydell and suggested transferring the Bruckner Plaza location and three other properties from Generali's policy to Affiliated's policy to save money. Skydell agreed and Stadtmauer told him that he would be in contact with his office for the needed information. Although Skydell had no personal involvement in obtaining insurance *460 for Bruckner Plaza from Affiliated, Stadtmauer spoke to Skydell or his staff and told them to contact Feldman so that Feldman could obtain the needed information to add the four locations to Affiliated's policy. As a result, Skydell's office sent Stadtmauer the existing insurance policies for the four locations.
On or about June 6, 1988, Bruckner's retail broker, the Feldman Agency, requested Continental to add the four properties to Affiliated's policy. Neither Bruckner nor its broker, Feldman, requested a specific coverage date except that coverage was to commence as soon as possible. On June 17, 1988, Continental faxed a letter to Affiliated requesting that the four properties be added, "[e]ffective inception if possible, otherwise as of today." Continental's request for coverage was acknowledge by Affiliated on Monday, June 20, 1988. By telefax dated June 22, 1988, Affiliated requested additional information on the properties for insurance purposes. This information was supplied two days later, and on June 27, 1988, Affiliated, unaware of the fire, issued a confirmation to Continental agreeing to bind coverage for the requested additional properties, retroactive to June 17, 1988.
It is stipulated by all parties that when Affiliated bound coverage on June 27, 1988, it intended to cover losses occurring to the Bruckner Plaza between June 17 and June 27, 1988 which were then unknown to its insured, Bruckner Plaza Associates. However, unbeknownst to Stadtmauer, the Bruckner partner in charge of obtaining the insurance, while the application for Affiliated's coverage was pending, a fire had caused substantial damage to the property. Although Harry Skydell knew of the fire the day it occurred, he did not immediately notify Stadtmauer. Skydell testified that he did not consider this event (the fire) so significant as to require immediate notice to the other partners. He testified that he managed many individual properties and he considered the fire a relatively minor occurrence. One other partner, Joseph Seiden, became aware of the fire about a day later, but there is no evidence that he notified any of the other partners.
*461 On or about June 29, the Feldman Agency notified Stadtmauer that coverage on the four properties had been obtained. Stadtmauer was unaware that Feldman requested coverage to be effective as of the date Affiliated received the insurance application. Since Stadtmauer originally believed coverage was effective on the day he received notice from Feldman, he did not consider making a fire loss claim under Affiliated's policy. When he received the insurance endorsement in August, 1988, Stadtmauer learned that Affiliated's policy was retroactive to a date prior to the fire. Stadtmauer then asked Feldman to change the effective date to July 1, 1988, a date after the fire, because he believed that it would be "legally wrong and fraudulent" to obtain coverage without having informed Affiliated of the intervening loss. He did not inform Affiliated of the fire because he did not think Affiliated's policy provided coverage. Stadtmauer testified that he probably knew about the fire before Feldman told him in late June that insurance was bound and that he never intended retroactive coverage.
Stadtmauer's request for a change in effective date of the policy was received in September 1988, misplaced, and not issued until the following year. When the change was made, Affiliated refunded the premium to Bruckner for the period of June 17 to July 1, 1988. The effective date of coverage on the other three locations, June 17, 1988, remained unchanged. On December 18, 1989, Affiliated received formal notice of the Bruckner Plaza loss. The notice of claim was filed late since, according to Stadtmauer, the partnership never believed that coverage existed and because the existing insurer, Generali, brought up the question of Affiliated's potential liability in the course of a separate proceeding.
Since this action involves a loss by fire to property in the state of New York, the law of that state governs the parties' responsibilities. State Farm, etc., Ins. Co. v. Simmons' Estate, 84 N.J. 28, 417 A.2d 488 (1980); Bell v. Merchants & Businessmen's Mut. Ins. Co., 241 N.J. Super. 557, 575 A.2d 878 (App.Div. 1990). Affiliated argues that there was no coverage for defendants' loss *462 because the partnership had knowledge of the fire prior to the time insurance was bound, and, thus, it was a known risk which fell outside the policy. Affiliated also contends that Bruckner's delay of eighteen months in filing a notice of claim voided coverage for the loss. Generali claims that Affiliated failed to prove that Stadtmauer, the partner making the change of insurance, was aware of the fire loss before insurance was bound. Additionally, Generali claims that an insurance carrier should not be permitted to alter the policy's effective date so as to avoid payment for a loss once the loss has occurred.
First, Affiliated's claim that Bruckner's delayed notice of the loss rendered its policy void is without merit. Delayed notice will be excused, as here, where the insured is unaware of insurance coverage. Solomon v. Continental Fire Ins. Co., 160 N.Y. 595, 55 N.E. 279, 280 (App. 1899); Greenwich Bank v. Hartford Fire Ins. Co., 250 N.Y. 116, 164 N.E. 876, 880-81 (1928); Zurich Ins. Co. v. Martinez, 24 Misc.2d 437, 201 N.Y.S.2d 810 (1960); Kitching v. Century Ins. Co., 20 A.D.2d 791, 248 N.Y.S.2d 107 (1964); York-Buffalo Motor Express v. National Fire & Marine Ins. Co., 181 Misc.2d 518, 43 N.Y.S.2d 483 (Sup.Ct. 1943), aff'd 268 A.D. 855, 50 N.Y.S.2d 845 (1944), rev'd on other grounds 294 N.Y. 467, 63 N.E.2d 61 (1945). See also Costanzo v. Pennsylvania Thresherman & Farmers' Mut. Cas. Ins. Co., 30 N.J. 262, 152 A.2d 589 (1959); Mariani v. Bender, 85 N.J. Super. 490, 205 A.2d 323 (App.Div. 1964). In this case, Bruckner was not aware that it might be entitled to coverage under Affiliated's policy until December 1989. The delay in notifying Affiliated of the fire loss was not, therefore, unreasonable. The more difficult question here is whether the loss of June 21, 1988 was known to Bruckner Plaza Associates prior to the binding of coverage.
Generally, a policy of liability insurance does not cover a loss occurring before its issuance, even though the loss occurs between the date of application and the date the policy is issued. Millar v. New Amsterdam Cas. Co., 248 A.D. 272, 289 N.Y.S. 599 (1936); Alcamo v. Motorist Cas. Ins. Co., 11 N.J. Misc. 350, 165 A. *463 861 (1933). However, it is well settled that an insurer and insured may agree that a policy may be made retroactive. Mutual Life Ins. Co. v. Hurni Packing Co. 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235 (1923); Hollender v. Bergen County Auto Club, 12 N.J. Misc. 657, 174 A. 222 (1934); Andrews & Boerum v. The Marine Ins. Co., 9 Johns. 32 (N.Y. 1812). In such instances, the parties may provide for a loss which occurred prior to the date of the policy, provided, of course, there is no fraud, concealment or material misrepresentation. Hallock v. The Commercial Ins. Co., 26 N.J.L. 268 (1857), aff'd 27 N.J.L. 645 (E & A 1858); Continental Cas. Co. v. Lanzisero, 119 N.J. Eq. 166, 181 A. 170 (E & A 1935). See also Reserve Ins. Co. v. Apps, 85 Cal. App.3d 228, 149 Cal. Rptr. 223 (1978). Couch, Insurance 2d, 39:87, p. 571 (1959). The general rule is stated in Appleman, Insurance, 4266, p. 106-109 (1979):
An insurer has the right to assume obligations antedating the policy date, if it so elects and the contract is founded on consideration. Under such circumstances, the insurer is liable for losses antedating the policy provided there is no fraud or concealment by the insured ... The parties to an insurance contract may agree that the effective date of the policy shall be prior to the actual execution or issuance thereof.
However, where the insured has knowledge of a loss between the date of the application and the policy date, and he conceals such fact, the insurer may be entitled to cancel the policy. Employers Commercial Union Ins. Co. v. Firemen's Fund Ins. Co., 45 N.Y.2d 608, 412 N.Y.S.2d 121, 384 N.E.2d 668 (1978); Western Fire Ins. Co. v. Moss, 11 Ill. App.3d 802, 298 N.E.2d 304 (1973).
Usually, if the insurer backdates its policy and charges a premium for the backdated period, it should bear the risk of loss in the interval between application and issuance of the policy. Guerin v. California Western States Life Ins. Co., 229 Cal. App.2d 325, 40 Cal. Rptr. 344 (1964). The Appleman text, supra, at p. 111, takes note of the practice of many insurers to pre-date policies to the date of application and to collect a premium for that period. "If no loss occurred in the interval between application and *464 issuance of the policy all is well. But when a loss has been sustained, the insurer then attempts to wiggle out of liability on the ground that the risk has been increased without its knowledge."
Generali contends that this is precisely the situation in the present case. They cite a number of cases for the proposition that an insurer's attempt to avoid coverage on backdated policies merely because of an innocent failure to reveal a loss during the backdated period should be rejected. Pendergast v. Globe & Rutgers Fire Ins. Co., 246 N.Y. 396, 159 N.E. 183 (N.Y. 1927); El Dia Ins. Co. v. Sinclair, 228 F. 833 (2d Cir.1915), cert. denied 241 U.S. 661, 36 S.Ct. 449, 60 L.Ed. 1226 (1915).
In Pendergast, supra, plaintiff, the owner of a tugboat agreed to charter its boat to Waterway Navigation provided that Waterway obtain insurance for the term of the charter. The boat had sunk in the period between the effective date of the binder and the date it was issued. Although plaintiff learned of the loss before the binder was issued, it was unaware of the pendency of the application for insurance. The court held that plaintiff may recover "even if he had knowledge of a loss prior to the writing of the policy, provided the agents negotiating the insurance had no such knowledge." In Pendergast, the plaintiff was not aware that the policy in question was about to be written. Instead, he believed that insurance had already been obtained by the charterer. Thus, plaintiff had no reason to make an immediate report of loss to any insurer.
Similarly, in El Dia Insurance, supra, a policy issued on May 10, retroactive to April 28, was deemed to cover a fire loss on April 29. Although plaintiff's president had immediate knowledge of fire damage to its property for over a week before the insurance binder was issued, he did not know that his brokers were in the process of obtaining insurance. Since plaintiff was not called upon to say anything, and since there was no fraud or misrepresentation, the insurer was held liable. 228 F. at 839-40.
*465 Courts in other jurisdictions have also held that an insured does not forfeit coverage under a backdated policy for innocently failing to reveal a loss. See Reserve Ins. Co. v. Apps, 85 Cal. App.3d 228, 149 Cal. Rptr. 223 (1978); Burch v. Commonwealth County Mut. Ins. Co., 450 S.W.2d 838 (Tex. 1970); Farmers Ins. Exchange v. Ware, 131 Ill. App.2d 781, 267 N.E.2d 350 (1971); Canadian Indemnity Company v. Tacke, 257 F.2d 342 (9th Cir.1958).
Ordinarily, an insurer's liability for a loss sustained during the retroactive period of a policy will depend upon the intent of the insurer and the insured at the time of the application. United States v. Patryas, 303 U.S. 341, 58 S.Ct. 551, 82 L.Ed. 883 (1938). There is no reason why the parties cannot contract against a loss which may have already occurred provided neither party was aware of the loss or failed to reveal a known risk. Hallock v. Commercial Ins. Co., supra, 26 N.J.L. 268, aff'd 27 N.J.L. 646; Dixon v. Western Union Assur. Co., 251 S.C. 511, 164 S.E.2d 214 (1968); Burch v. Commonwealth County Mut. Ins. Co., 450 S.W.2d 838 (Tex. 1970). A party's intent to cover a particular risk may appear from the policy or it may be inferred from the circumstances or established by extrinsic evidence. Gans v. Aetna Life Ins. Co. of Hartford, 214 N.Y. 326, 108 N.E. 443, 444 (1915) ("The intent of the insured and the company ... as expressed binds and obligates both of the parties."); Clark-McCaffrey, etc., Co. v. National Fire Ins. Co., 32 N.J. Super. 138, 142, 108 A.2d 32 (App.Div. 1954) ("The intention of the parties is the cardinal principle in construing and interpreting an insurance contract.").
As in Pendergast and El Dia, supra, Generali contends that none of the Bruckner partners aware of the fire knew that an application for retroactive coverage was pending and thus, they had no reason to report the loss. And, since Stadtmauer was unaware of the fire, he could not have reported the loss to the insurance agent. But unlike the circumstances in Pendergast and El Dia, the present case involves a partnership and whether the knowledge of one partner may be imputed to another.
*466 It is well settled that where an insured has knowledge of a loss during the insurance application process and fails to disclose such fact, the policy may be deemed void as a binding contract. Millar v. New Amsterdam Ins. Co., 248 A.D. 272, 289 N.Y.S. 599 (1936). Where the applicant does not have knowledge of a loss, a policy issued retroactive so as to include the loss may be upheld. See State Farm Mut. Auto Ins. Co. v. Calhoun, 236 Miss. 851, 112 So.2d 366 (1959).
The primary issue in this case is whether knowledge of a loss by one partner may be imputed to another so as to create constructive knowledge that a loss has occurred, thereby voiding coverage for failure to notify the insurer of the loss. Affiliated asserts that knowledge possessed by one partner with respect to partnership property is imputable to a co-partner. Manufacturers Hanover Trust Co. v. Jayhawks Assoc., 766 F. Supp. 124, 127 (S.D.N.Y. 1991). See also Baumann v. Citizens Trust Co., 248 A.D. 9, 289 N.Y.S. 606 (1936), aff'd 276 N.Y. 623, 12 N.E.2d 608 (1938); Gateway Nat'l Bank of Chicago v. Saxe, Bacon & Bolan, 40 A.D.2d 653, 336 N.Y.S.2d 668 (1972) (Each partner is a general agent of the others and what is known to one partner is known by all partners.) Thus, Affiliated contends that Skydell's knowledge of the fire is imputable to Stadtmauer who failed to disclose the loss.
Knowledge by one partner with respect to any matter relating to a transaction within the ordinary scope of the partnership business is knowledge to all partners. Knowledge with respect to partnership property is imputable to the remaining partners regardless of the nature of the partnership. Baumann v. Citizens Trust Co. of Binghamton, supra, 248 App.Div. at 18, 289 N.Y.S. 606; 68 C.J.S. 175. This knowledge is imputable so long as the partner was acting within the scope of partnership affairs and within his authority. Ibid. See Bienenstok v. Ammidown, 155 N.Y. 47, 49 N.E. 321 (1898). See also Ruckman v. Decker, 23 N.J. Eq. 283 (Ch. 1871). Other jurisdictions are in accord with this rule. Stewart v. Ragland, 934 F.2d 1033, 1046 *467 (9th Cir.1991) (under California law, a partner's knowledge of partnership business while acting for the partnership is imputable to the entity); Robert R. Jones Assocs. Inc. v. Nino Homes, 686 F. Supp. 160 (E.D.Mich. 1987) aff'd in part, rev'd on other grounds in part 858 F.2d 274 (6th Cir.1988) (under Michigan law, a partner's knowledge of potential copyright infringement imputable to the entity); In re DiMartino, 108 B.R. 394 (D.R.I. 1989) (a partner who sells a building to another partnership in which he is also a partner cannot commit fraud because his knowledge about the building and his interest in both partnerships impute knowledge to all buying partners); Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc., 650 F. Supp. 1378, aff'd 840 F.2d 236 (4th Cir.1988) (one partner's signature on a release is imputable to partnership and no claim of fraudulent inducement will stand). See also Sommers v. Hergenreter, 523 S.W.2d 176 (Mo. App. 1975); Campbell v. City of Dallas, 120 S.W.2d 1095 (Tex. 1938); Northcross v. Miller, 184 Ark. 463, 43 S.W.2d 734 (1931); Curry v. Wright, 101 Fla. 1489, 134 So. 508, reh'g denied, 101 Fla. 1489, 136 So. 643 (1931).
Individual members of a partnership may even be held responsible for torts of which they have no knowledge, committed by any member of the firm in the course of partnership business. Kavanaugh v. McIntyre, 210 N.Y. 175, 104 N.E. 135, 137 (1916), aff'd 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916). See also Guild v. Herrick, 51 N.Y.S.2d 326, 331 (1944); N.J.S.A. 42:1-13 and 42:1-15. And see Malanga v. Manufacturers Cas. Ins. Co., 28 N.J. 220, 146 A.2d 105 (1958); National Premium Budget Plan Corp. v. National Fire Ins. Co. of Hartford, 97 N.J. Super. 149, 234 A.2d 683 (Law Div.), aff'd 106 N.J. Super. 238, 254 A.2d 819 (App.Div. 1967).
In regard to imputed knowledge, the Uniform Partnership Act, adopted by New York as well as New Jersey, provides that:
Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to his mind, and the knowledge of any other partner who reasonably could and should have communicated it to the acting partner, operate as *468 notice to or knowledge of the partnership, except on the case of a fraud on the partnership committed by or with the consent of that partner. [New York Partnership Law, 23 (McKinney 1988); N.J.S.A. 42:1-12.]
A partnership should be charged with imputed knowledge when:
the partner having "knowledge" had reason to believe that the fact related to a matter which had some possibility of being the subject of partnership business, and then only if he was so situated that he could communicate it to the partner acting in the particular matter before such partner gives binding effect to his acts. The words "who reasonably could and should have communicated it to the acting partner" accomplish this result. [New York Partnership Law; Uniform Laws Annotated, Partnership, 12, Comment (1969).]
Generali points out that notice and knowledge have separate meanings under the Uniform Partnership Act and that although Skydell had notice of the loss, this notice does not amount to knowledge of the loss by the entire partnership. However, the difference between notice and knowledge may be largely immaterial. If an agency relationship exists between the parties, notice to one person will ordinarily be imputed to another person, and that notice, in most instances, amounts to knowledge. Mileasing Co. v. Hogan, 87 A.D.2d 961, 451 N.Y.S.2d 211 (1982); 59A Am.Jur.2d 252;
It is a fair inference from the evidence presented in this case that at the time of the fire both Stadtmauer and Skydell were acting as representatives of the partnership. Skydell's knowledge of the fire is chargeable to the partnership and this knowledge created a duty to disclose a known fire loss to the prospective insurer.
Although Harry Skydell was not personally involved in applying for insurance from Affiliated, he was implicitly involved in the process. Skydell was the partner formerly responsible for maintaining insurance on the firm's properties, and in June 1988, he was the partner directly responsible in the management of those properties. Skydell was also aware of the potential change of insurance based on his initial conversation with Stadtmauer. Moreover, his office, Hudson Park Associates, was directly involved in providing the necessary information to Feldman for the addition of Bruckner Plaza to the Affiliated policy.
*469 In these circumstances, once he learned of the fire, Skydell should have communicated with Stadtmauer to apprise him of the fire and to determine the status of the current insurance on the property. Had he done so, it is reasonable to infer that he would have learned that Stadtmauer had already requested a change in insurance and that the application was pending. Thus, Affiliated could have received timely notice of the Bruckner loss from Stadtmauer prior to issuing its policy. See Baumann v. Citizens Trust, supra, 248 App.Div. at 18, 289 N.Y.S. 606 (failure to make inquiry results in imputed knowledge).
Based on the change of conditions material to the risk, Stadtmauer was under an obligation to inform the insurer of the change promptly (he had six days within which to do so). Hare & Chase, Inc. v. National Sur. Co., 60 F.2d 909 (2d Cir.1932), cert. denied 287 U.S. 662, 53 S.Ct. 222, 77 L.Ed. 572 (1932). "Failure by the insured to disclose conditions affecting the risk of which he is aware, makes the contract voidable at the insurer's option." Weir v. City Title Ins. Co., 125 N.J. Super. 23, 308 A.2d 357 (App.Div. 1973). Moreover, knowledge by a partner of substantial damage to property is imputable to the partnership where the loss directly affects the very basis for the partnership's existence, namely the ownership and operation of investment real estate. Baumann v. Citizens Trust, supra, 248 App.Div. at 18, 289 N.Y.S. 606.
The insured in this case, Bruckner Plaza Associates, is a partnership and as such, acts through its partners, employees and agents. The knowledge legally attributable to the partnership is the collective knowledge of those partners, employees and agents. In this respect, the insured partnership clearly knew of the loss during the pendency of the application and before coverage was bound. The fact that one single partner may not have had all of the relevant knowledge regarding the fire and the pending insurance application is irrelevant in determining what the partnership itself knew. The insured entity is the partnership which, I find, *470 based on the reasonable inferences from the evidence, knew of the loss prior to June 27, 1988.
Where the managing partner of a real estate investment concern has notice or knowledge of a fire causing substantial damage to one of its properties, that knowledge may be imputed to the partnership for purposes of determining whether a loss should have been revealed to an insurer during the pendency of an application for insurance coverage.[1] Accordingly, judgment is entered for plaintiff, Affiliated, declaring that its policy of insurance and endorsements do not cover the damages sustained by Bruckner Plaza Associates on June 21, 1988.
NOTES
[1] Having determined that Affiliated' policy does not cover Bruckner's loss, I need not reach Generali's contention that Affiliated wrongfully changed the effective date of the policy to avoid coverage.