902 A.2d 266 (2006)
386 N.J. Super. 485
AMERICAN MILLENNIUM INSURANCE COMPANY, Plaintiff-Appellant/Cross-Respondent,
v.
Mainor BERGANZA and Jose Arias, Defendants, and
Hartford Underwriters Insurance Company and Stegers Brothers Drywall Company, Inc., Plaintiffs-Intervenors/Respondents/Cross-Appellants,
v.
American Millennium Insurance Company, Mainor Berganza and Jose Arias, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 2006.
Decided July 17, 2006.
Robert E. Brenner, Somerville, argued the cause for appellant/cross-respondent (Brenner & Levine, attorneys; Mr. Brenner, on the brief).
Christopher J. Brennan argued the cause for respondents/cross-appellants (Marriot, Casagrande, Callahan, Blair & Grier, attorneys; Mr. Brennan and William G. Marriot, on the brief).
Before Judges COBURN, COLLESTER and S.L. REISNER.
*267 The opinion of the court was delivered by
COBURN, P.J.A.D.
American Millennium Insurance Company issued a workers' compensation insurance policy in New Jersey to Mainor Berganza. As required by statute, the *268 policy provided that American Millennium was "directly and primarily liable" to Berganza's employees. After one of Berganza's employees, Jose Arias, was injured on the job, American Millennium sued Berganza and Arias for rescission of the policy, alleging fraud by Berganza. When the accident occurred, Berganza was a subcontractor in New Jersey for Stegers Brothers Drywall Company, Inc., which had a workers' compensation policy issued by Hartford Underwriters Insurance Company. Hartford and Stegers intervened in the action, opposing American Millennium's request. They took that course because of potential liability under N.J.S.A. 34:15-79, which requires coverage by a general contractor's insurer when a subcontractor has no coverage. After a bench trial, judgment was entered permitting rescission as to Berganza for fraudulent statements he made in the application process, but denying rescission as to Arias. The judgment also made Hartford responsible for half of any compensation that might be awarded to Arias and gave both insurance companies the right to seek reimbursement from Berganza. American Millennium appeals, and Hartford and Stegers cross-appeal, each side contending that the other should be liable for the entire compensation award. Berganza, who will ultimately be responsible under the judgment for any compensation paid to Arias in the workers' compensation proceedings, has not appealed. We affirm the denial of American Millennium's request for rescission as to Arias and reverse the judgment making Hartford responsible to Arias.

I
In early January 2003, Mainor Berganza, a drywall subcontractor for Stegers, employed Jose Arias to work for him on Stegers' project in New Jersey. On Saturday, January 18, Berganza went to City Line Insurance, Inc., which was a producer of business for Morstan General Agency of New Jersey, Inc., a wholesale broker that placed workers' compensation policies with American Millennium. Berganza, with the help of City Line's employee, Donald E. Dutton, filled out an application and questionnaire for an American Millennium workers' compensation policy. The application requested an effective date for the policy of January 19. City Line immediately faxed "a policy certificate" to Stegers and faxed the application and questionnaire to Morstan, which, in turn, faxed them to American Millennium on Monday, January 20.
On January 21, Arias fell off a ladder while performing work at Stegers' worksite and broke his leg. The judge found that Berganza reported the accident to City Line on January 24. Without objection, a fax dated February 28, 2003, from Dutton at City Line to American Millennium was introduced into evidence. The fax stated, among other things, that when Berganza reported the accident, City Line gave him the telephone number of Risk Management Planning Group, which was the third party administrator for American Millennium. Berganza called Risk Management and was told that he "needed a policy number to report the claim." Then a City Line employee called Morstan twice, each time leaving a message requesting the policy number, and a couple of days later Dutton called Morstan, apparently with the same message.
On January 29 or 30, American Millennium issued the insurance policy to Berganza with an effective date of January 19. The policy included the following language:

H. Statutory Provision

These statements apply where they are required by law.

*269 1. As between an injured worker and us, we have notice of the injury when you have notice.
2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.
3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.
4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.
....
6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.
Nothing in these paragraphs relieves you of your duties under this policy.
On February 4, City Line faxed a "First Report of injury," which was signed by Berganza, to Morstan. On February 20, City Line sent that report directly to American Millennium. Thereafter, American Millennium declined coverage and filed this suit for rescission.

II
The Workers' Compensation Act, N.J.S.A. 34:15-1 to -142, makes insurance carriers directly responsible to the employer's workers. N.J.S.A. 34:15-83 says this:
Every contract of insurance covering the liability of an employer for compensation to injured employees ... shall provide, or be construed to provide, that it is made for the benefit of the several employees of the insured employer ..., and such contract may be enforced by any of such employees ..., suing thereon in his name ... as though distinctly made party thereto.
And N.J.S.A. 34:15-84 says this:
Every such contract shall further provide, or be construed to provide, that any injured employee ... may enforce the provisions thereof to his ... benefit... by joining the insurance carrier with the employer in his petition filed for the purpose of enforcing his claim for compensation....
Section H of American Millennium's policy, quoted above, makes the insurance company directly responsible to an insured's employee when, as here, that result is required by state law. Under subsection H.3, the insurance company is "directly and primarily liable" to injured employees, who are entitled to "enforce" the contract. And under H.4, the insurance company agrees to be "bound by decisions against [the employer in any compensation action]." Although our statute does not expressly state, as subsection H.1 does, that "as between an injured worker and [the insurer], [the insurer] ha[s] notice of the injury when [the employer] ha[s] notice," that concept is implicit in our statutory scheme since it creates a direct relationship between the insurer and the employee. We conclude that American Millennium had no right to deny its obligation to the injured employee based on the fraud committed by the employer in the application and questionnaire until it cancelled the policy under N.J.S.A. 34:15-81.[1] The contract is clear, and our statute is clear.
*270 We note that the same result was reached when fraud was committed in the application in Aioss v. Sardo, 223 A.D. 201, 227 N.Y.S. 708, 710, aff'd, 249 N.Y. 270, 164 N.E. 48 (1928), with the court holding as follows:
Whatever the rights may be between the carrier and the insured employer, so long as the policy, once it is issued, is outstanding, the carrier's liability to the injured employee remains. No question of warranties or of false representations made by the employer in securing the policy and no stipulations of the policy as between the employer and carrier have force or effect as between the carrier and such an employee who was injured while the policy is outstanding.
In affirming that decision, the Court of Appeals noted that the policy provided that coverage
shall not be affected by the failure of the employer to do or refrain from doing any act required by the policy, and further that the company shall be bound by any award rendered against the employer.
[Aioss, supra, 249 N.Y. at 272, 164 N.E. 48. (citation omitted) (internal quotation marks omitted).]
The court then concluded that "[u]nder these circumstances, as between the insurance carrier and the employee the fact that a policy is issued upon untrue statements made by the employer is no defense." Ibid.; see also Bates v. Nelson, 240 Iowa 926, 38 N.W.2d 631, 635 (1949) ("We are abidingly convinced that under our statutes the liability of the insurance carrier to the injured employee depends only upon the liability of the employer to the employee, regardless of any question that may arise between the employer and such insurer."); cf. Buff v. Fetterolf, 207 Pa.Super. 92, 215 A.2d 327 (1965).
Although the language of the cases cited above is broad, they do not involve the failure to report a known accident occurring while the insurance application for a backdated policy is pending. Professor Arthur Larson addresses this aspect of the law. After subscribing to the doctrine that an employer's fraud in an application for workers' compensation insurance would not provide a defense for the insurance company against an action by the employee for benefits, 4 Larson, Workmen's Compensation Law, § 92.22 (Matthew Bender 1988), he goes on to observe that the opposite may be so when the employer tries to obtain insurance for an accident that has already happened:
The only situation in which the insurance would be defeated for all purposes by act of the employer is that in which the insurance is absolutely void ab initio, rather than voidable; this would occur if the employer attempted to insure against an accident that had already occurred, by pre-dating the insurance and fraudulently concealing the known existence of an accident within the period so covered.

[Id. at § 92.24 (emphasis added).]
But that is not quite the case here. For when Berganza submitted the application the accident had not yet happened. Although generally an insurance policy provides no coverage for losses occurring before it issues, even though the loss occurs between the application date and issuance of the policy, Affiliated FM Ins. v. Kushner *271 Cos., 265 N.J.Super. 454, 462, 627 A.2d 710 (Law Div.1993) (citations omitted), an insurer and an insured may agree to make the policy retroactive. Id. at 463, 627 A.2d 710 (citations omitted). But if the insured learns about a loss while the application is pending, and conceals that fact, the insurer may rescind the policy. Ibid. Assuming that principle applies in the context of workers' compensation insurance as to both the employer and the employee, it has been said that rescission is generally not available when the failure to reveal the accident is innocent. Canadian Indem. Co. v. Tacke, 257 F.2d 342 (9th Cir.1958); El Dia Ins. Co. v. Sinclair, 228 F. 833 (2d Cir.1915), cert. denied, 241 U.S. 661, 36 S.Ct. 449, 60 L.Ed. 1226 (1916); Reserve Ins. Co. v. Apps, 85 Cal.App.3d 228, 149 Cal.Rptr. 223 (1978); Pendergast v. Globe & Rutgers Fire Ins. Co., 246 N.Y. 396, 159 N.E. 183 (1927); Burch v. Commonwealth County Mut. Ins. Co., 450 S.W.2d 838 (Tex.1970). Here, the trial judge found as a fact that Berganza reported the accident to City Line while the application was pending and that Berganza and City Line took reasonable and prompt steps in their effort to report the accident to American Millennium through its agent, Risk Management. Although we will assume Berganza made fraudulent statements in the application and questionnaire, as found by the trial judge, thereby justifying rescission as to him, it is clear from the record that when the accident occurred, Berganza promptly tried to report it. A worker is entitled to the benefit of his employer's prompt effort to report the accident in these circumstances. Oster v. Riley, 276 Minn. 274, 150 N.W.2d 43, 48 (1967); Orto v. Poggioni, 245 A.D. 782, 281 N.Y.S. 16 (1935), aff'd 271 N.Y. 551, 2 N.E.2d 690 (1936); 4 Larson's Workmen's Compensation Law, supra, at § 92.24.
Even if we assume, as American Millennium argues, that Berganza and his agent, City Line, unreasonably delayed reporting the accident to American Millennium, we would still hold that under our workers' compensation statute, rescission was inappropriate as to Berganza's injured employee because the accident happened after the application was made and because of the direct relationship the statute creates between the insurer and the insured's employees. We reach that conclusion because, as already noted, the statute says that workers' compensation policies must "be construed to provide" that they are "made for the benefit of the several employees of the insured employer," and because the employees are expressly granted the right to sue the insurer directly. N.J.S.A. 34:15-83; N.J.S.A. 34:15-84. The policy in question clarifies the point by stating that the insurance company is "directly and primarily liable" to injured employees and will be "bound by decisions against [the employer in any compensation action]". The point is driven home by the additional policy provision that "as between an injured worker and us, we have notice of the injury when you [the employer] have notice." Consequently, we are satisfied that once this backdated policy issued, Arias was covered. American Millennium was not required to issue a backdated policy. Having followed that course, which involved voluntarily taking the risk that occurred here in return for the additional premium, it cannot now deny coverage as to the injured employee. We leave for another day the question of whether such coverage would also be present after a backdated policy issues when the employer's knowledge of the accident predates the application for insurance.
The judge required Hartford to pay half the compensation award because he thought that N.J.S.A. 34:15-79 applied here. That statute provides, among other things, that when a subcontractor fails to *272 carry the required workers' compensation insurance, the general contractor's carrier becomes liable. Since American Millennium is fully liable under its policy, that statute is not implicated here. Therefore, we reverse the judgment against Hartford.
Affirmed in part; reversed in part; and remanded for entry of an amended judgment consistent with this opinion.
NOTES
[1] N.J.S.A. 34:15-81 requires the employer to give at least ten days notice before canceling a policy and is clearly designed to ensure that employers are not unexpectedly left without coverage, to the end that workers not be left without coverage. In context, the provisions of section 81 further support the conclusion that, as between the carrier and an injured worker, the Legislature did not intend rescission to be a permitted remedy for an employer's fraud if it would leave an injured worker without coverage.